Bythwood et al. v. The State.

## BYTHWOOD ET AL. vs. THE STATE.

1. Indictment for playing cards "at a *public place*." The proof showed that there was a large assembly of persons on a public day at a certain store house in the country. The defendants, five in number, "went into a piece of woods where the under growth was very thick, and into a deep hollow in said woods

about four hundred yards from said store, and out of sight of any road," and there engaged in a game of cards. Whilst so engaged, three other persons came to the same place, and took part in the game, one of whom testified, that when he went into the woods he did not know where the defendants were, but hunted them up; that he had never known cards to be played at that place before, but that during the previous year he had known persons to play "in the piece of woods," some fifty or one hundred yards from "said hollow." *It was held*,

That the playing was not "*at a public place.*"

ERROR to the Circuit Court of Wilcox.

Tried before the Hon. Robert Dougherty.

The plaintiffs in error were indicted under the statute, for playing cards "in a *public place.*" The facts, as shown by the bill of exceptions, were these. Some time in the summer of 1851, there was a large collection of people at Pharr's store, in Wilcox county, to hear the discussion of the candidates. On that day the persons named in the indictment, five in number, "went into a piece of woods where the under growth was very thick, and into a deep hollow in said woods, about four hundred yards from said store, and out of sight of any road," and there engaged in a game of cards. Whilst so engaged, three other persons came to the same place, and also took part in the game of cards. The witness, who was one of the party, said, that when he went into the woods, he did not know where the other persons were, "but hunted them up." He stated, also, that he never knew cards to be played at that place before, but that during the previous year he had known persons to play at cards in the "piece of woods," some fifty or a hundred yards distant from the place where this playing took place. On this state of facts, the court charged the jury, that if they believed the evidence, they must find the defendants guilty.

The charge of the court is assigned for error.

F. K. BECK, for plaintiffs in error.

The charge of the court in this cause seems to have been based upon the idea that the defendants played in a place made public by an assemblage of persons. That this view is incorrect, is shown by the facts and circumstances attending the playing, the nature and character of the place, and the

care taken by the defendants to insure their privacy. The case of Coleman *et al.* v. The State—opinion delivered at this term—is decisive of this.

M. A. BALDWIN, Attorney General, for the State.

1. Every place is a public place where the people have a right to go. The woods is a place where the people have a right to go, and are apt to go, especially that portion within four hundred yards of a store where a large number of persons is assembled. Campbell v. The State, 19 Ala. 369; Flake v. The State, 19 ib. 551; Roquemore v. State, 19 ib. 528.

2. If this particular place was private in itself, it was made public by the assemblage of the persons engaged in gaming, which were to the number of seven or eight. In the case of Coleman *et al.* v. The State, at this term, Dargan, C. J., says, " We must look at the *character of the place, the manner of ingress to it,* as well as the number of persons that are or do assemble at it, in deciding whether it is public or private." It is also intimated in the same case, that if persons to the number of *five or six* are in the habit of frequenting a place for the purpose of playing cards, the jury might find it a public place. In the case at bar, persons were in the habit of playing cards near the same spot in the woods where these defendants played; so near the same spot, that being in the woods, it may be said it was the same place.

PHELAN, J.—The effect of the charge of the court was, to declare the place where this card playing was done a "*public place.*" The defendants below could only be found guilty, according to law, on that ground.

Was that place public, or was it not? If public, it must be so in one of two ways; that is, it was of a public nature, public *per se,* like the street or highway, or it was made public at the time by force of circumstances.

That it was not public in its nature, it is not necessary to argue.

Was it, then, made public at the time, by force of circumstances?

What will make a place public, within the meaning of this

statute, which of itself is not so, is a question not very definitely settled by our decisions heretofore, and it becomes necessary, therefore, to resolve it upon principle.

If we look to the evil intended to be remedied by this statute of ours against playing at cards or dice in certain specified places, we cannot come to any other conclusion, than that it was the intention of the legislature to inhibit card playing only in places where the playing would be of evil example and influence, to others than those engaged in playing themselves. It must always be borne in mind, when considering this subject, that the exhibition of *gaming tables* and merely *playing at cards* are put upon a very different footing by the statute. *Gaming tables* are forbidden every where, without regard to place; *card playing* is only forbidden at certain places. The legislature did not intend to denounce the fact of playing at cards as a vice or crime in itself, nor is it so, any more than playing at chess or backgammon. But card playing is seductive ; the practice of it, especially by the young and thoughtless, leads to *gambling ;* and it was its exposure, and the temptations thus offered to others, that the law intended to prohibit. To do this, certain places are expressly inhibited ; they are, " tavern, inn, store house for retailing spirituous liquors, or any public house or highway," and then the statute adds, " or any other *public place*, or any out house where people resort."

When the playing is in any of the places specially enumerated, there is a plain rule to go by, and no matter what secrecy is given to such playing, those engaged must know that it is contrary to the statute. But the want of some well settled rule as to what shall make a place a *public place*, within the meaning of this statute, which is *not so of itself*, and which is not specially named, is calculated to embarrass, and perhaps mislead those who would not be willing to violate the law, if they fairly understood it.

It was my wish, for this reason, to endeavor to define and settle some rule upon the subject; but the majority of the court think that it is better, all things considered, not to attempt to lay down any general rule, but to leave the cases to be decided as they arise, each upon its own peculiar facts and circumstances.

The facts and circumstances which distinguish this case do not, in our opinion, make the place where the playing took place a *public place*, within the meaning of the statute. These persons went to that hollow evidently to be out of the way of observation, to be, in fact, *concealed* from the public view, and it is not reasonable to hold that their being there made that retired and secluded spot a *public place*, merely because they went to play cards, when, as has been shown, the evil intended to be averted was not the card playing itself, but the effect of the example upon others.

