Windham et al. v. The State.

WINDHAM ET AL. vs. THE STATE.

1. The term "*public place*," as used in the statute against gaming, (Code, § 3243,) does not include any of the places therein before specifically mentioned, but embraces all other public places, whether they are public *per se*, or become public merely by force of circumstances; and therefore, if the evidence shows that the defendants played cards at a "*public house*," they cannot be convicted of playing at a "*public place*."

2. A room in a warehouse for storing cotton on the bank of a navigable river, which is used by the clerk both for the transaction of business and as a sleeping room, is a "*public house*" within the statute against gaming, but not a "*public place*."

3. The same distinction is applicable to the cases of Burdine v. The State (25 Ala. 60), Sherrod v. The State (*ib.* 78), Roquemore v. The State (19 *ib.* 528), and Clarke v. The State (12 *ib.* 492).

4. When the gaming is at a "public house," or at any one of the other places specifically enumerated in the statute, no matter what secrecy may be used, nor how few the number present, it is a violation of the statute.

APPEAL from the Circuit Court of Pickens.
Tried before the Hon. GEO. D. SHORTRIDGE.

THE appellants were indicted (under section 3243 of the Code) for gaming. On the trial, as appears from the bill of exceptions, "it was proved that the defendants played at a game with cards in a room of a house used for storing goods, &c., on the bank of a navigable river in the county, and about one hundred yards from the cotton sheds where cotton to be shipped was stored ; that the occupant of said room was the clerk of the warehouse, and made out and distributed cotton receipts in said room ; that it was the office of the concern, where business with steamboats was settled ; that the playing was in the day-time, with the front door locked, and the windows closed, so that the parties playing could not be seen from the outside ; that the back door, which opened into an alley, was closed and locked, except when the occupant passed ·in and out, at his option, to deliver cotton receipts to negroes hauling cotton to the sheds ; that no person, except those playing, visited the room during the time, and that the door of the adjoining store-room was locked ; that the parties play‧ing were there by invitation of the occupant of said room, but

he did not play ; that he occasionally, about that time, invited persons there to play cards, and they did play ; that he sometimes let one Dr. Windham have the key of said room, with permission to play there, and they did play. The witness stated, however, that these defendants were planters, living in the county, and that this was the only game they ever played there ; further, that the river, at the time of the playing above-mentioned, was too low for the boats to run, and that all gaming ceased there so soon as the river opened and the boats commenced running.

"Upon this evidence, at the request of the solicitor, the court charged the jury, that if they believed the occupant of the said room was in the habit of inviting his friends there to play cards, and they did play, and others came to him for permission to play cards, which he never refused, and these likewise played, then the place was a public place"; to which charge the defendants excepted, and which they now assign for error.

S. F. HALE, for the appellants.

M. A. BALDWIN, Attorney General, *contra.*

RICE, J.—Section 3243 of the Code is a substantial transcript of the law against gaming which had been of force at least from 1842 until the Code took effect. That section is in the following words: "If any person plays at any game with cards, or dice, or with any device or substitute for the same, at any tavern, inn, store-house for retailing spirituous liquor, or house or place where spirituous liquor is retailed or given away ; or *any public house,* or *highway,* or in *any other public place* ; or in any out-house where people resort, such person, on conviction, must be fined not less than twenty or more than fifty dollars."

The words "public place," as used in this section, do not mean or include any of the places therein before *specifically mentioned,*—that is "tavern, inn, store-house for retailing spirituous liquor, or house or place where spirituous liquor is retailed or given way ; or any public house, or highway"— however public any of these *specified places* may be. But the words "public place," as therein used, do mean and include

all "*other*" places which are public, whether they are public *per se,* or become public merely by force of circumstances.— "Public house" in this statute is a specific term, and is followed by a term of more comprehensive meaning—that is, "any *other public place.*" And therefore, upon a well established principle, it has been decided, that although a person may be guilty of playing cards at a "highway," (" or public house,") such person cannot lawfully be convicted for playing cards at a "public place."—Bush v. The State, 18 Ala. 415.

In Johnson v. The State, 19 Ala. 527, it was decided, that a room in the second story of a two-story house, which was accessible only by means of a flight of steps leading up to it on the outside, and which was used by one of the proprietors of the house as a sleeping apartment, (the lower room being used by the proprietors for retailing spirituous liquor,) was within the prohibition of the statute against gaming at a "store-house for retailing spirituous liquor, or house or place where spirituous liquor is retailed or given away." Believing this decision to be correct, we are under its influence impelled to the conclusion, that if the evidence set forth in the bill of exceptions in the present case be true, the room in which the plaintiffs in error played was, at the time of the playing, a "*public house*", within the meaning of the statute.

In Clark v. The State, 12 Ala. 492, Chief Justice Collier (a majority of the court concurring with him) held, that if a lawyer, or a physician, "invites a few friends to his office, either in the day-time or night, and closes the door so as to exclude all others, that he may spend a social hour at cards or dice with these friends, it ceases to be a *public place,* within the meaning of the statute." The principle of that decision was followed in Roquemore v. The State, 19 Ala. 528, in Burdine v. The State, 25 Ala. 60, and in Sherrod v. The State, 25 Ala. 78. We do not now feel at liberty to overrule those cases. The charge of the court below is opposed to those decisions, and is not sustained by Campbell v. The State, 17 Ala. 369, which held a shoe-maker's shop a "public place," mainly on the ground that *many* passed into and out of it during the playing ; which case we here re-affirm. Nor is it sustained by the case of Mills v. The State, 20 Ala. 86.

But it must be noticed, that in Clark v. The State, *supra,*

Chief Justice Collier conceded, that the office of the lawyer or physician was a "*public house*," which was not denied by any of the judges in that case, and which is not denied or questioned in Burdine v. The State, or Sherrod v. The State, aboved cited.

When the playing is in a public house, or in any of the other places specifically enumerated in the statute, no matter what secrecy there may be in the playing, nor how few the friends who may be spending their "social hour at cards or dice," they are violators of the statute, and incur its penalty. Bythwood v. The State, 20 Ala. 47.

If the court below had charged the jury, that if they believed all the evidence set forth in the bill of exceptions, the room in question was a " public house", we should have sustained the charge. But in charging that the room was a " public place", the court below erred ; and therefore we reverse its judgment, and remand the cause.