Huffman v. The State.

## HUFFMAN *vs.* THE STATE.

[INDICTMENT FOR GAMING.]

1. *Code construed by previous judicial decisions.*—The substantial re-enactment in the Code, of a previous statute, must be taken as a legislative adoption of the judicial construction which it had received.
2. *Construction of penal statutes.*—It is the duty of the courts, while disclaiming the right to extend a criminal statute by construction to cases out of its letter, to apply it to every case clearly within the mischief intended to be remedied, where its words are broad enough to embrace such case.
3. *Country store-house held public house.*—A country store-house is a public house within the statute against gaming. (Code, § 3243.) If it consists of two rooms, both under the control of the same person, the front room being used as a dry-goods store, while the other, a shed-room, is attached to it, and communicates with it by a door, it is *prima facie* an entirety ; and though this presumption may be overcome, by proof that the rooms are entirely disconnected, and appropriated to distinct and separate uses, yet it is not repelled by proving that the back room was used as a bed-room by one of the proprietors of the store, who was an unmarried man,—that no goods were kept or sold there, no accounts settled there, and that witness never had seen any of the customers of the store use it for any purpose.
4. *Charge invading province of jury.*—A charge which instructs the jury, without hypothesis, " that they must find the defendant guilty," even when the evidence consists of the testimony of a single witness, is erroneous.

FROM the Circuit Court of Coosa.

Tried before the Hon. ROBERT DOUGHERTY.

THIS indictment was in the general form allowed by the Code. The bill of exceptions states the following facts : " On the trial of this case, the State offered a witness, who testified, that the defendant, with four others, each of whom is indicted for playing cards at the same time and place, played cards in this county, within six months previous to the finding of the indictment; that they played in a bed-room, attached to a store, which store belonged to defendant and another ; that the playing was at night, when the doors were locked, and the shutters of the window were closed ; that no one could see into the room, and no one was present besides the players and himself, each of whom was present by special invitation of defendant ; that the front part of the building was used as a dry-goods store, in which room the post-office was kept ; that no liquor was retailed or sold there ; that the bed-room communicated with the store-room by a door, the key of which was kept by defendant; that there was a back door in said shed-room, leading into the back yard ; that the store and post-office were closed at the time of the playing, and no business was being done there ; that there was nothing in said room, except a bed and bed furniture, chairs, table, wash-stand, pail, pitcher, bucket, and an old desk then not used for any purpose ; that he never had seen, since the store belonged to defendant, any article sold in the store kept in that room ; that nothing was kept there, except what is herein set out ; that he had never seen any of the customers of the store use that room for any purpose ; that no books of the store were kept there, and no accounts were ever settled there ; that he had never seen said bed-room used for any purpose connected with the business of the store, except that it was used as defendant's bed-room ; that defendant was a single man, and kept his wardrobe, trunk, and clothes in said room ; that he had never seen the public use said bed-room, and that no one was allowed to come into it, while the playing was going on, except those playing as aforesaid ; that witness was in said store frequently, and lived near said place.

" This was all the evidence in the case, and on this evidence, the court charged the jury, that they must find the defendant guilty ; to which charge the defendant excepted."

4

ELMORE & YANCEY, for the appellant.

M. A. BALDWIN, Attorney-General, *contra.*

RICE, C. J.—It is settled in this State, that a store-house in the country is a public house, within the meaning of section 3243 of the Code ; and that if the house consists of two rooms, the one in front being used as a dry-goods store, the other being a shed attached to, and communicating with the store-room by a door, and both rooms are under the control of the same person, it is, *prima facie*, an entirety ; and that the front room being clearly within the prohibition of said section, the shed-room is, *prima facie*, within the prohibition. Brown v. The State, 27 Ala. R. 47, and cases therein cited ; Huffman v. The State, 28 *ib.* 48 ; Sweeney v. The State, *ib.* 47.

It is also settled, that the separate rooms of such a house may be so disconnected, by being appropriated to distinct and separate uses, as to become in law as separate and distinct from each other, as if they were in fact two distinct houses, so far as the offenses provided for in said section are concerned ; and that whenever such disconnection is established, the presumption of the entirety of the house is overthrown, and the fact that one of the rooms is a store-house ceases to be evidence that the other is within the prohibition of said section.—Dale v. The State, 27 Ala. R. 31 ; Brown v. The State, *supra.*

The main question, therefore, in this case, if the evidence is believed, is, whether the presumption of entirety is overthrown, by proof of such disconnection of the two rooms as we have above mentioned. To this question we are compelled to respond in the negetive, upon the facts testified to in this case, unless we overrule Johnson v. The State, 19 Ala. R. 527. The opinion in that case contains the following language : " The proof was, that the proprietors of the establishment for retailing had procured a house, containing two rooms ; one above, which was accessible only by means of a flight of steps leading up from without, *which was used by one of the proprietors as a bed-room ;* and the other, or lower room, was that in which the spirituous liquors were retailed. *The playing took place in the upper room ;* and the question is, must we consider *it within the prohibition of the statute ?"* The court decided,

that the upper room—the room " which was used *by one of the proprietors as a bed-room,*" was within the prohibition of the statute against gaming, and that playing cards in that room was indictable.

A store-house for selling dry goods is within the prohibition of the statute, (as settled in the case above cited,) as well as a store-house for retailing spirituous liquors ; and if the proof of the disconnection of the two rooms in the case of Johnson v. The State, *supra,* was not sufficient to overcome the presumption of the entirety of the house, and to take the upper room out of the prohibition, we cannot, without overruling that case, hold that the evidence in the present case, (if it is believed,) is sufficient to repel that presumption, and take the shed-room out of the prohibition.

We are not willing to overrule that case. It was decided by an able court, before any of the present members of this court came on the bench, and before the Code was adopted. The statutory provisions construed in it, were afterwards substantially re-enacted in the Code. Such re-enactment must be regarded as a legislative adoption of that construction. Our reports show that the case has received the sanction of all the judges of this court, who have had an opportuuity of expressing their opinion upon it, and that it has recently been directly re-affirmed. See the cases cited *supra* ; and Windham v. The State, 26 Ala. R. Independent of all this, it derives powerful support from Heydon's case, 3 Rep. 8, in which it was unanimously resolved by all the barons of the exchequer, " that for the sure and true interpretation of all statutes in general (be they *penal* or beneficial, restrictive or enlarging of the common law,) four things are to be descerned and considered : 1. What was the common law before the making of the act ? 2. What was the mischief and defect for which the common law did not provide ? 3. What remedy the parliament hath resolved and appointed to cure the disease of the commonwealth ? And 4. The true reason of the remedy ? " And then the office of all the judges is, always to make such construction as shall suppress the mischief, and, advance the remedy, and *to suppress subtle inventions and evasions for continuance of the mischief,* and *pro privato commodo,*

and to add force and life to the cure and remedy, according to the true intent of the makers of the act, *pro bono publico.*"

One of the solid reasons for investing the judges with the office of construction, is, " that the law-makers could not possibly set down all cases in express terms." And whilst we disclaim the right to extend a *criminal* statute to cases out of its letter, yet we hold it to be our duty to apply it to every case clearly within the mischief or cause of making it, where *its words* are broad enough to embrace such case.—The Schooner Enterprise, 1 Paine's Rep. 32 ; Smith's Com. on Statutes, 839 to 854, 861.

We are unanimous in the opinion, that the case of Johnson v. The State, *supra,* ought not to be overruled ; that if the evidence in the present case is believed, the room in which the defendant played cards, is a " public house" within the meaning of section 3243 of the Code ; and that he ought to be convicted under the indictment in the record.

But the evidence consists of the testimony of a single witness, who was examined in the presence of the jury. We cannot say from the record that the jury were bound by law to believe him ; for, although his testimony as set forth before us contains nothing to excite distrust of him, yet his *manner,* which is not and cannot well be set forth on record, may have excited doubt and distrust of him in the minds of the jury. His credibility was a question for them. That question was taken from them by the charge of the court ; and in doing that, the court erred.—Huff v. Cox, 2 Ala. R. 310. For that error, we feel compelled to reverse the judgment, and to remand the cause.