# Phillips v. The State.

### Indictment for Gaming.

*Card playing at "house or place where spirituous liquors are retailed."* — To authorize a conviction under an indictment for gaming (Rev. Code, § 3620), on proof that the defendant played at a game with cards, by night, in a private bed-room in the second story of a building, it is not sufficient to show that spirituous liquors were retailed in one of the stores below, but a business connection must be shown between the store and the bed-room.

VOL. LI.

[Phillips *v.* State.]

FROM the City Court of Lee.

Tried before the Hon. JNO. M. CHILTON.

W. H. BARNES, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

PETERS, C. J.— The general assembly of this State has not yet seen fit to denounce card-playing as a public offence, unless it is engaged in in certain named places. It requires an act of playing cards in some of the places named, to constitute guilt. Unless both these elements enter into the charge alleged, the accused should not be convicted. The offence created by the statute is "Card-playing at public places." It is thus defined in the. Revised Code: "Any person, who plays at any game with cards, dice, or any device or substitute for either cards or dice, *at* any tavern, inn, storehouse for retailing spirituous liquors, or house or place where spirituous liquors are retailed, sold, or given away; or *in* any public house, highway, or other public place, or any outhouse where people resort, must, on conviction, be fined not less than twenty, nor more than fifty dollars." Rev. Code, § 3620. It is quite evident that it is not the object of the statute just quoted to condemn the playing with cards merely for amusement, at a place rendered private by its use. *Clark* v. *State*, 12 Ala. 492 ; *Sherrod* v. *State*, 25 Ala. 78. ; *Burdine* v. *State*, 25 Ala. 60. In the first and second of the cases above cited it was settled, that a physician's shop might be a public place by day, and a private place by night; and in the latter case the same distinction was applied to a lawyer's office, under like circumstances. In *Clark's Case*, Judge ORMOND declares: "The mischief designed to be prevented was the exposure of the practice of gaming, or playing at games of chance, to indiscriminate observation, by which the young and unwary might be led to engage in it." 12 Ala. 493.

In the case at bar, the playing was not in any of the places named in the. statute, but in the private bed-room of the accused, at night, when no other persons were present, or entitled to be present, save the two persons who engaged in the game. The bed-room was in the second story of a two-story building, in the first story of which there were three stores, one of which was a place where spirituous liquors were retailed or sold. But it was not shown that the bed-room above said had any business connection with the liquor store in the first story of the building. I know no valid reason why a liquor vendor's private sleeping-room may not be as sacred as the office or the shop of a lawyer or a doctor ; or how it happens that, under

[Phillips v. State.]

the same laws, the immunity of the one is broader than that of the other. If a bed-room, because it is a bed-room, is sacred in the one case, reason and even-handed justice should make it so in all. If the legislature had intended to have prohibited a grocery keeper and liquor vendor from playing cards in his private bed-room at night, it would have been very easy to have said so; and the omission to do this is the strongest evidence that it was not intended. And clearly such a playing is not within the mischief of the statute, as declared by Judge ORMOND, and from which we may attain to an inflexible rule for the interpretation of the section of the Code above quoted.

I think the case of *Johnson* v. *The State* (19 Ala. 527), compared with *Clark's Case* (12 Ala. 492), and *Burdine's Case* (25 Ala. 60), has gone about as far as a fair and just construction will permit. In the case first named, Justice CHILTON declares: " The object of the statute was not only to suppress the evil practice of gaming, but to disconnect it from tippling-shops, and houses where ardent spirits are retailed; and whether the gaming takes place in the room where the retailing is carried on, the one in which the parties keep their books, or in which they or their clerks sleep, *if connected with the same establishment*, and constituting an appendage thereto, the party playing is equally guilty." 19 Ala. 528. This very clearly shows that there must be a business connection between the private sleeping-room and the retail establishment, in order to constitute guilt. The proof does not show such a connection in this case. Yet the charge of the court could only be sustained on such proof. As such proof did not exist, the charge was vicious. It was, therefore, erroneous. Upon the evidence, the accused should have been discharged in the court below. In this, we do not intend to overrule the former decisions of this court upon the construction of the statute against gaming, but to declare that it is necessary to show a connection of a business character between the sleeping-room and the retail establishment. 28 Ala. 47; *Huffman* v. *The State*, 29 Ala. 40.

The judgment of the court below is reversed, and the cause is remanded for a new trial.