[Foster v. The State.]

# Foster  v.  The State.

*Indictment for Playing Cards in Tavern or Inn.*

1.  *Gaming; what is a tavern or inn.*—A house of public entertainment, used both as a boarding-house and a tavern or inn, though unlicensed, is within the prohibition of the statute against playing cards at a "tavern, inn, public house," &c.  (Code of 1876, § 4207; Code of 1886, § 4052); and the house being *prima facie* an entirety, a room in the third story, rented by the year from the proprietor, is also within the prohibition of the statute, although it is shown that the tenant sleeps, eats, and cooks his meals there.  .

APPEAL from City Court of Montgomery.

Tried before Hon. T. M. ARRINGTON.

Defendant Foster was indicted for playing cards at a tavern, inn, or public house, &c., under § 4052, Code 1886, and on trial was found guilty.  The facts are set out in the opinion.  The following charges, numbered 1 and 2, were requested by him, and refused by the court.

1.  " If the jury believe from the evidence that the playing at cards, or betting at cards, occurred in the room occupied at the time of the playing or betting and for several years previous thereto, by DuBose Bibb as a bed room in which he lived and slept, and the evidence does not show beyond all reasonable doubt that *people resorted there*, then the said room would not be a *public place*, and the jury must acquit the defendant."

2.  " Unless the jury are satisfied from the evidence that the boarding house of Mrs. Schoolcraft was a public house, was *duly licensed* by law, and that the travelling public was allowed at all times to resort thereto, that the room occupied by DuBose Bibb was a part of that public house, and connected therewith, and that cards were played at such public place, then the jury must find the defendant not guilty."

THOS. N. McCLELLAN, Attorney General, for the State.

SOMERVILLE, J.—The defendant is indicted for playing at a game with cards at a tavern, inn, public house or out house, where people resort—the indictment following the require-

ments of section 4052 of the Code of 1886.—Code of 1876,
§ 4207,

The evidence, in our judgment, was sufficient to sustain a
conviction for playing at a tavern or inn, and authorized the
giving of the general affirmative charge, which was given
by the court in favor of the State.

An inn is a house of entertainment for travellers—being
synonymous in meaning with hotel or tavern. It was form-
erly defined to mean " a house where a traveller is furn-
ished with everything which he has occasion for while upon
his way."—*Thompson v. Lacy*, 3 B. & Ald. 283; *People v.
Jones*, 54 Barb. (N. Y.) 311. But this definition has nec-
essarily been modified by the progress of time, and the
mutations in the customs of society and modes of travel in
modern times. An inn, however, was always, and may now,
when unlicensed, be distinguished from a boarding house,
the guest of which is under an express contract, at a certain
rate, and for a specified time—the right of selecting the
guest or boarder, and fixing full terms, being the chief
characteristic of the boarding-house as distinguished from
an inn, except as to inns or hotels specially licensed under
the statute where general contracts with guests are expressly
authorized.—Code, 1886, §§ 1324, *et seq.; Willard v. Rein-
hardt*, 2 E D. Smith (N. Y.) 148; *McDaniels v. Robinson*,
62 Amer, Dec. 586, *note*. There is nothing inconsistent or
unusual, however, in a house of public entertainment having
a double character, being simultaneously a boarding-house
and an inn. In respect to those who occupy rooms and are
entertained under special contract, it may be a boarding-
house; and in respect to transient persons, who, without a
stipulated contract, remain from day to day, it is an inn,
tavern or hotel.—*Cromwell v. Stephens*, 2 Daly (N. Y.)
15; 24; *Chamberlain v. Masterson*, 26 Ala. 371.

The house occupied by Mrs. Schoolcraft was clearly both
an inn and boarding-house within the above definitions, par-
taking of a dual character in this particular.

The playing was done in a room in the third story of this
house, which had been *rented from the proprietress* by one
Bibb by the year, and was occupied by him as a bed room,
in which he, having no family, prepared his meals, ate and
slept. There was no connection between said room and inn
or boarding-house, except that it was part of the building
occupied by Mrs. Schoolcraft, and the entrance to the room
was through that to the boarding-house. Was the room a

[Foster v. The State.]

part of the inn so as to be brought within the prohibition of the statute directed against playing cards at an inn?

It has been uniformly held in this State where a house is public, as a store, and a bed room in the same building is under the control of the proprietor of the building, the room, though used for private purposes, is *prima facie* within the prohibition of the statute as to playing at a public house, "unless it affirmatively appears that it is not used as an appendage to the store, nor in the prosecution of its business, nor in connection with the store for the mere convenience or accommodation of the owner, his employees or his customers but is occupied for some justifiable private purpose entirely disconnected from the business of the store, or the convenience of its customers."—*Brown v. State*, 27 Ala. 47; *Huffman v. State*, 29 Ala. 40; *Arnold v. State*, *Ib.* 46.

Yet when the playing is at a public house, inn, tavern, or any other of the places specially enumerated in the statute, no matter what secrecy may be observed in the playing, those who participate in the game will be held to be violators of the law, and subject to the penalty.— *Windham v. State*, 26 Ala. 69; *Bythwood v. State*, 20 Ala. 47.

So when a case is embraced in the words of a statute, and clearly falls within the mischief intended to be remedied by it, such case will be construed to come within the prohibition of the statute, however penal its terms may be.—*Huffman v. State*, 29 Ala. 40.

The room in question was in the same building occupied as an inn, and was rented by the occupant from the proprietress of the inn. It must, therefore, be construed to be appurtenant to it, so as to be a part of it within the prohibition of of the statute.—*Russell v. State*, 72 Ala. 222. There can be no difference between the case of a room in a hotel or inn engaged by the year, the month, the week or the day, so far as the question before us is concerned. In the Elizabethan inns, travellers paid separately for their appartments and for each meal. In modern times there are hotels kept on what is known as the European plan, where rooms may be engaged for a specified price and time, without meals or other accommodations. In fact the modern guest often rents his room from the inn or hotel proprietor, and takes his meals at a restaurant; or obtain his meals there, and his lodging elsewhere—there being at this day any amount of diversity as to the contracts and relations of the various patrons to the building and business of the proprietor. As observed

in a recent case, and as we have substantially said above, "as the customs of society change and the modes of living are altered, the law as established, under different circumstances, must yield and be accommodated to such changes." *Carpenter v. Taylor*, 1 Hilt. 195.

Any other construction of the statute would easily enable persons to evade its provisions by the most flimsy devices.

The first charge requested by the defendant ignored the inquiry as to the room being appurtenant to the inn, and was properly refused. It erroneously assumed that no conviction could be had under the indictment unless the evidence showed the playing was done in a "public place."

The house could be a hotel or inn, without being licensed under the statute—a fact which is excluded erroneously from the consideration of the jury by the second charge requested on the part of the defendant —*Lanier v. Youngblood*, 73 Ala. 587; Code, 1886, §§ 1324, *et seq.* There was no error in refusing this instruction.

Affirmed.