## COCHRAN vs. THE STATE.

[INDICTMENT FOR GAMING.]

1. *Sufficiency of indictment.*—In an indictment for gaming, it is sufficient to charge that the defendant played "at a game *of* cards or dice," &c., instead of "at a game *with* cards or dice."

2. *Evidence confined to single offense.*—Although an indictment for gaming, in the form prescribed by the Code, charges several distinct offenses in the alternative; yet, on the trial, the State is confined to evidence of a single offense; and cannot, after introducing evidence of any one act, be allowed to adduce evidence of another act at a different time or place.

3. *Barber's shop is public house, and, prima facie, entirety.*—A barber's shop is a public house, within the prohibition of the statute against gaming, and, *prima facie,* an entirety; and where a two-storied house, in a city or town, is rented and controlled by a barber, who uses the two rooms on the ground

floor as his shop, the back room on the second floor is also within the prohibition of the statute, although only used by the barber as a depository for broken and disused daguerrean materials.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. ROBERT DOUGHERTY.

THE indictment in this case charged that the defendant played "at a game of cards, or dice, or at some device or substitute therefor," &c. The evidence adduced on the trial, and the rulings of the court in relation thereto, are thus stated in the bill of exceptions:

"On trial of this case, the solicitor for the State introduced Wm. H. Jemison and several other witnesses, by whom he proved, that they had seen the defendant, within twelve months before the finding of the indictment, play games with cards, in a room over the barber's shop of Shandy Jones, a colored man, in said county; that the said shop, at the time of the playing, was the shop in which said Jones carried on his trade as a barber, and consisted of two rooms on the ground floor of the house, one fronting on the street, and the other immediately back of it, and separated by a partition, which had a door in it opening from one room into the other; that a door opened from said back room, in the rear, into a court, or yard; that there was no communication from either of these rooms into the room overhead, in which the playing took place; that there were two rooms over said shop, separated by a partition, which had a door in it connecting them; that the playing took place in the back room of these two, which was immediately over the back room of said shop; that this room had two windows in it, looking into the said court, or yard; that 'Washington Hall' was immediately on the west side of said house, which house consisted of four rooms, as above mentioned, separated only by a wall on the north side; that there was a shoemaker's shop, separated only by a wall, and consisting of two rooms, which were divided by a partition, with a door in it, and also a door in the back room leading into the said yard; that there were two rooms over said shoemaker's shop, which were separated by a partition like those over

the barber's shop; that the said rooms over the two shops had a small passage between them; that the only way of reaching the rooms over said barber's shop was by a flight of steps in said yard, to a platform from which a door opened into said passage, and from said passage by a side door opening into each of said rooms; that there were no blinds to the windows of the room in which the playing took place, but they had thick curtains, which obstructed all sight when they were down.

"The witnesses proved, that the curtain of the window next to the said platform was always kept down during the playing, and the curtain of the other window was also kept down, except a small opening at the lower part to let in light enough to see how to play; that those playing could not be seen, either from the front, or from the said yard; (by one witness) that it was possible a person, by putting his head out of a window in one of the upper rooms of the 'Washington Hall,' might see the persons playing in said room, through the window with the curtain partly up, but he did not think they could; that the defendant played several times in said room, during the three or four months before the indictment was found; that a company of some eight or ten gentlemen were in the habit of playing in said room, but no one else was admitted there, at any time, except by invitation; that during the period aforesaid, different gentlemen, to the number of fifteen or twenty, had played there at different times; that the persons present never exceeded seven, all of whom were engaged in the game; that the place was private, and was not a place where people resorted; that no one was permitted to come in during the playing, unless they were recognized as one of the company; that the defendant never bet; that said two rooms had no connection with the barber's shop, nor were they appendages to the same, and were not used by the barber in any way in connection with his business, either by himself, his employees, or customers; that they saw in each of said rooms parts of a daguerrean apparatus, but neither of said rooms was used as a daguerrean gallery; that these rooms were under the control of said Jones, who had rented the

whole house; that the key was obtained from Jones by some one of the company, and the door was always kept locked while they were playing.

"After this evidence had been introduced, the solicitor proposed to prove, that the defendant, within twelve months before the finding of the indictment, being a practicing physician, had played in the bed-room of his doctor's shop; that his shop consisted of two rooms, in the front one of which he kept his medicines, library, and every thing pertaining to his business; that the bed-room, in which the playing was alleged to have occurred, was a back room, reached by a short flight of stairs, and containing his bed, wardrobe, &c. The defendant objected to the introduction of this evidence, because the State had already proved a playing over the barber's shop of Shandy Jones; but the court overruled the objection, and admitted the evidence.

"The defendant then offered witnesses to prove that, in truth and fact, there was no evidence before the grand jury who found the indictment, except in reference to the playing over said barber's shop; but the court excluded this evidence, on the objection of the prosecuting attorney.

"After the evidence was through, the court required the solicitor to elect, under what part or count of the indictment he would insist upon a conviction under the evidence; and he elected the playing over the barber's shop as a public place, and the playing in defendant's bed-room as a public house.

"The defendant excepted to the rulings of the court, in permitting the State to prove the playing in defendant's bed-room, and in refusing to permit him to prove that there was no evidence before the grand jury except as to the playing over the barber's shop."

E. W. PECK, for the appellant.

M. A. BALDWIN, Attorney-General, *contra.*

RICE, C. J.—Prior to the adoption of the Code, it was a rule, that an indictment, charging a man disjunctively, was bad. The reason was, that such indictment mention-

ed distinct offences, and did not show of which of them the indictors accused the defendant.—2 Hawk. ch. 25, § 58 ; 1 Waterman's Archb. Cr. Pl. 91.

As to the gaming treated as indictable by section 3243 of the Code, the above mentioned rule is abolished by the Code ; and a form of indictment is given, which charges a man disjunctively.—Appendix to the Code, page 507, No. 60. Section 3503 of the Code expressly sanctions the manner of stating the act constituting the offense, as set forth in that form ; and it gives a like sanction to the other forms given in the Appendix, in all cases where they are applicable. The sufficiency of those forms, in the cases for which they were designed, has been deliberately asserted by our predecessors, and is not now considered an open question.—Noles v. The State, 24 Ala. 672 ; Elam v. The State, 25 Ala. 53.

The plaintiff in error contends, that the indictment in this case is not in the form given in the Code for offenses under section 3243, and that it is therefore bad. The only difference pointed out by him, or perceived by us, is, that the indictment charges the playing to have been "at a game *of* cards or dice," and the form charges the playing to have been "at a game *with* cards or dice." But that difference is immaterial, because it is a mere difference in words, without any difference in meaning.—Code, § 3518. A game *of* cards is necessarily a game *with* cards, and a game *of* dice is necessarily a game *with* dice. Our conclusion, therefore, is, that the indictment substantially states the act constituting the offense in the manner indicated by the form given, and is sufficient.—Code, § 3518.

Such an indictment, however, does not include more than one offense ; and conceding that the State may elect under it, for which particular offense it will proceed, yet it cannot under it elect to proceed for *two distinct offenses.* Elam v. The State, 26 Ala. 48. In allowing the State to proceed under the indictment in this case, *for two offenses,* the court below erred. Under such indictment, the election of the State is made by introducing evidence of any act charged in it ; and

after introducing evidence of any such act, the State cannot give evidence of any other act charged.—Elam v. The State, 26 Ala. 48; 2 Greenlf. on Ev. § 86; Stante v. Prickett, 1 Camp. 473; Gillon v. Wilson, 3 Monr. 217. "If the prosecuting officer deems it for the interest of the State that evidence as to different offenses should be offered, he must frame the indictment accordingly; which is in every case very easily done."—Elam v. The State, 26 Ala. 48. But, under the indictment in this case, the court below erred in admitting the evidence as to the playing in the bed-room of the defendant's shop, after the State had introduced evidence as to the playing in the room over the barber's shop.

As the cause must, for the errors above pointed out, be remanded, we deem it proper to say, that if all the evidence set forth in the bill of exceptions is believed, the room over the barber's shop, in which the playing occurred, is a public house within the meaning of section 3243 of the Code, and the defendant is guilty as charged. As the house consisted of four rooms, two below, and two above, the two rooms below constituting the barber's shop, and as all the rooms were under the control of the same person, (the barber,) the house is, *prima facie*, an entirety; and the barber's shop being a public house, and clearly within the prohibition of said last mentioned section, the upper rooms are, *prima facie*, within the prohibition. The presumption of entirety is not overthrown, by evidence of mere non-user by the proprietor, of the room in which the playing occurred, nor by his putting and keeping daguerrean materials in it, nor by any other evidence in this case. If that presumption could be overthrown by proof of non-user of such a room by the proprietor, we should likely see a very decided increase of unoccupied rooms in many localities. Citizens would cease to have any respect for a law which could be rendered inoperative by such flimsy evasions. The courts could scarcely be deemed in earnest, if they were to hold that a house loses its public character by the putting or keeping in it a few daguerrean materials.—See Huffman v. The State, 29 Ala. 40; same

case, at the present term; Arnold v. The State, 29 Ala. 46.

The views above expressed render it unnecessary to notice the exception arising out of the offer of the plaintiff in error to prove that there was no evidence before the grand jury who found the indictment, except evidence as to the playing in the room over the barber's shop. And therefore we decide nothing as to that exception.

For the errors above mentioned, the judgment of the court below is reversed, and the cause remanded.