## HARRIS *vs.* THE STATE.

[INDICTMENT FOR GAMING.]

1. *Sufficiency of indictment.*—An indictment for gaming, which charges the defendant, in several counts, with playing " at a game with cards, or dice, or at some device or substitute therefor," at each one of the places prohibited by the statute, is a substantial compliance with the provisions of the Code.

2. *Playing at a game with a device or substitute for cards.*—To authorize a conviction under an indictment for gaming, on proof that the defendant played a game of *euchre* with dominoes, it must be referred to the jury to decide, 1st, whether that game, when played with dominoes, is substantially the same as when played with cards; and, 2d, whether dominoes had become, at the time of the defendant's playing, a device or substitute for cards in playing euchre, or were in fact so used in that particular game in which the defendant participated.

3. *Opinion of witness inadmissible.*—A witness for the State cannot be asked, on cross examination, " whether or not dominoes were a device or substitute for cards in the game at which the defendant played."

From the Circuit Court of Perry.

Tried before the Hon. C. W. RAPIER.

THE indictment in this case, to which a demurrer was interposed and overruled, was in these words :

" The grand jury of said county charge, that Robert O. Harris, before the finding of this indictment, played at a game with cards, or dice, or at some device or substitute therefor, at a tavern. And the grand jury of said county charge, that Robert O. Harris, before the finding of this indictment, played at a game with cards, or dice, or at some device or substitute therefor, at an inn," &c. ; specifying in separate counts all the places enumerated in the statute.

The evidence adduced on the trial, and the rulings of the court in relation to it, are thus stated in the bill of exceptions:

"A witness for the State testified, that the defendant played a game of dominoes, in a storehouse in said county, within less than twelve months before the finding of the indictment; that said game is played with twenty-eight pieces of bone, numbered from one to six, besides one suit of blanks; that there were seven suits; that the game played by defendant was called euchre, which might be played by from two to five persons; that three others played with the defendant, it being a four-handed game; and that the game is played thus: Turning the numbered sides of said pieces flat on the table, the players then turn over one each; and the one turning the piece with the highest number of spots, wins the trump. The pieces are then shuffled, with the faces turned down; each player draws five pieces, and one of them turns up another piece for a trump. The one so turning up the trump is not the player who won the trump, or whose trump it was, but the player on the right of the one so winning the trump. The player who won the trump has the right to discard one of his pieces, and, in lieu thereof, take the piece turned up as a trump; and if, after so discarding and taking up said trump, his opponent won or took three tricks, his opponent gained two in the game. When four persons played at the game, ten was the number which had to be gained, to win the game. In playing, each player must follow suit, if he can; and if not, he may trump. In playing the game, the phrases, 'trumps,' 'marches,' 'tricks,' 'dealt,' 'shuffled,' and 'euchred,' were used. The spots on the pieces regulated the value of the dominoes, reference being had to what was trumps. At the game of euchre, if any player had no spots on the dominoes corresponding with that led by his opponent, he could trump, and take the trick; so many tricks making a point in the game. To ascertain what was trumps, the rule was this: When a trump was to be made, the end of the domino upon which was the greatest number of spots, was the trump-number; as, for instance, if six-

one were turned up, six would be the trump, and all the dominoes having six on the end would be trumps. As to the dominoes which were not trumps, their value was determined by the number of spots on them; the one having the highest number of spots being most valuable. If, for instance, sixes were trumps, and five-one were led, five-two would have the greatest value, and would take the trick, if only two persons were playing the game. To play the game of euchre, five was the number of dominoes drawn.

"The witness further testified, that the defendant did not know how to play at a game of cards, was a member of a Christian church, and in the best standing as such, and was as good, upright, steady and moral a citizen as lived in the State; that many of the best citizens, and orderly members of churches, in the community where the playing took place, occasionally amused themselves by playing the same game with dominoes; that no liquor was retailed at the storehouse where said playing took place, and none was retailed in the village where it was located; that the owner and proprietor of the store was himself a church-member, and would not allow a card to be thrown in his house, with his consent, under any circumstances. On cross examination, the defendant propounded this question to said witness: 'Whether or not were dominoes a device or substitute for cards in the game at which defendant played, as testified to by him?' The State's counsel objected to this question, on the ground that it called for the opinion or conclusion of the witness. The court sustained the objection, and would not let the question be asked or answered; but stated that the defendant might ask the witness, whether the game at which the defendant played with dominoes, as testified to by him, was or was not a game which is played with cards. The defendant excepted to the ruling of the court in refusing to allow said question.

"Another witness for the State was then introduced, who testified, that he was acquainted with the game of euchre, as played with dominoes, and as played with cards; and that the game was played, with dominoes, as above

stated. Also, that when the player entitled to the trump discarded a piece, and took up the trump, he was said to be euchred, if his opponent made three tricks; and his opponent then made two. If either party made the whole five tricks in playing a hand, he was said to make a march, and counted two. To win the game, five or ten was the number fixed on to be gained; and the player who took three, out of the five tricks, made one in the game. Said witness further testified to the general principles regulating the game of euchre with dominoes, as stated by the first witness, and to the use of the same phrases in the game, whether played with dominoes or with cards. Also, that with cards, their value in the game depended upon the suit turned up by the player. For instance : If clubs were trumps, all the clubs out are trumps; and of the other cards out, the highest of the suit led will take that trick. With cards, the jack, or knave, of the trumps of the suit led, is the right bower; and the knave of the suit of like color is the left bower. The right bower is the highest trump; the left bower the next highest in value; then the ace of the suit of trumps; then the king; then the queen; and so on down. The bowers do not make a point in the game, but are only high trumps : a player may have both bowers, and yet not make a point, and even be euchred. If the knaves are not dealt out to the players, there would be no bowers in playing that hand; and a hand is frequently played in which no bowers are out. In dominoes, the doublets are the highest trumps, as stated by the first witness. For instance : If sixes were trumps, double-six would be the highest trump, and six-five the next highest; but they were never called bowers, but only the highest trumps. A game of euchre could be played with dominoes. The doublet of the number turned up for trumps, and the second highest number, might not be dealt out; and a player might even have the doublet and the next highest trump, and be euchred as in cards, only making two tricks as in cards.

" The solicitor then produced before the court and jury a pack of cards and a set of dominoes, and, with said last

witness, exemplified the game of euchre with cards. The witness testified, and showed, that the game was played, with cards, by first shuffling the cards, and then cutting for the deal, the player cutting the card of highest value being entitled to the deal; that the dealer then shuffled the cards, and dealt around to each player, first two or three cards, and then again two or three, as the case might be, so as to give each player five, and then himself turned up the trump; that each player followed suit, as in dominoes, if he could, and, if he could not, might trump; that a player was said to be euchred in the same manner at the game with cards as with dominoes; that when a player won all the tricks, he was said to win a march, at the game with cards, as well as with dominoes; and that the player who made three tricks at the hand, in either game, was counted one in the game. A game of euchre was then played by the solicitor and said witness, first with cards, and then with dominoes; and the following results were shown: Five cards were dealt out, as above stated, to each player; and one of the players made one point in the game. Five dominoes were then dealt out, and he made one point. The cards were then taken up, and played out, with like result; and then again the dominoes, until the game was finished; the points that made the game and won it having been made with cards and dominoes. Said witness testified, on cross examination, that a deck of cards for playing euchre consisted, if he was not mistaken, of thirty cards, and not twenty-eight; that in playing the game with cards there were a right and a left bower, which were the knaves of the suit of trumps and of the other suit of the same color; that the right bower was the highest card in the game of euchre with cards, and the left bower the next highest; that in point of fact, when the game was played with dominoes, there were no right and left bowers, though he had heard the double-six and six-five pieces called the right and left bower.

"The State having rested on the above evidence, the defendant introduced five witnesses, all experts in the game of euchre, both with cards and with dominoes,

whose testimony was," substantially, that euchre with cards, and euchre with dominoes, were not the same, but different games; that a player, skilled in either game, could not play the other without first learning it; and they specified particularly all the points of difference between the games. "It was admitted, to save time, that forty other witnesses, who were all present in court, and all experts in the game of euchre, both with cards and with dominoes, should be considered as testifying to the same facts. The defendant then introduced two witnesses, one of whom understood the game of euchre with dominoes, but not with cards, and the other of whom understood playing it with cards; who then endeavored to play a game of euchre before the court and jury, one with cards, and the other with dominoes, but testified that it was impossible. Another witness for the defendant, who was an expert at the game of euchre, both with dominoes and with cards, testified, that he was present in court during the playing between the solicitor and witness above described, and observed the game; and that the solicitor *stocked* the cards, and played the game with a deck of cards not used in playing euchre,—not using the face cards at all, and using the cards of ten spots, and down to the deuce. The solicitor then played a game of euchre with said witness, with a proper euchre deck of cards, and with a set of dominoes; and took tricks, and made points, with both; and said witness then stated, that the game could be played through, and the result would be the same as in the first game above referred to.

"The above was the substance of all the evidence; and thereupon the court charged the jury, amongst other things,—

"1. That if the defendant, within twelve months before the finding of the indictment, and in Perry county, played with dominoes, in a store, a game which is played with cards, then he would be guilty of playing at a game of cards with a device or substitute therefor.

"2. That the defendant would be so guilty, although they might believe that he did not know how to play a game with cards.

"3. That if they believed that the game of euchre, as played with dominoes, is a game played with cards; and that the defendant played euchre with dominoes, at a storehouse in said county, within twelve months before the finding of the indictment, then he would be guilty under the statute against gaming, and it would be their duty to so find him.

"4. That if they should find that the games of euchre with cards and euchre with dominoes, though played differently in some respects, are played upon the same principles, and with the same results, and are substantially the same game; and that the defendant played at the game of euchre with dominoes, at a storehouse in said county, within twelve months before the finding of the indictment,—then the defendant would be guilty of a violation of the statute against gaming, and they should so find him.

"The defendant excepted to each of these charges, and asked the court to instruct the jury as follows:

"1. That before they can find the defendant guilty, they must believe that, in the game played by him, he used dominoes as a device or substitute for cards.

"2. That before they can find the defendant guilty, they must believe that, in playing the game with dominoes, he used the dominoes as a device or substitute for cards.

"3. That unless they find from the evidence that the defendant played at a game of cards in point of fact, using the dominoes as a device or substitute for cards, they must find him not guilty.

"4. That if they believe from the evidence that the game played with dominoes was a proper game at dominoes, as well as at cards; and that the defendant played the game with dominoes as and for a game with dominoes; and that he was not playing a game at cards, using the dominoes as a device or substitute for cards,—they must find him not guilty.

"The court refused each one of these charges, and the defendant excepted to the refusal of each."

I. W. GARROTT, for the appellant.

M. A. BALDWIN, Attorney-General, *contra.*

RICE, C. J.—Where the Code prescribes the ingredients of an offense, and lays down a form for indictments for that offense, that form, *mutatis mutandis*, is equivalent to an indictment which alleges the existence of the ingredients of the offense, and of the facts in the doing or not doing whereof the offense consists. It is upon that ground, that the forms of indictment laid down in the Code may be sustained. For, when they are thus treated, they do not relieve the State from any proof which would be required of it under an unexceptionable common-law indictment, nor fail to give the defendant notice of the matters against which he is to defend himself. It is certainly proper to consider and treat him as possessed of a knowledge of *the legal effect* of the indictment. Under the influence of these views, we hold, that the indictment in this case, which is substantially, if not literally, in the form prescribed in the Code for indictments under section 3243, is a good and sufficient indictment for the offenses denounced and defined by that section. True, the words used in the indictment and form are not indentical in sound with those employed in that section; but their *legal effect* must be deemed and taken as the same. And under the indictment, the State is not entitled to a conviction, without proof of the elements of the offense declared and prescribed by the aforesaid section.—See Code, § 3244; Cochran v. The State, at the last term, 30 Ala. 542.

2. One of the offenses punishable under said section 3243, is playing at a game with a device or substitute for cards, at a storehouse. That is the offense of which, it seems, the defendant was convicted in this case; and therefore, we shall inquire whether the defendant appears to have been tried and convicted according to law of that offense. In trying him, it was the duty of the court to refer to the jury the following questions of fact: 1st. Did the defendant, within a year before the finding of the indictment, in the county in which it was found, play at a game of " euchre " with dominoes ? 2d. Was " euchre "

a game which could be played with cards? 3d. Was the game of "euchre" with cards, and the game of "euchre" with dominoes, though played differently in some respects, substantially the same game; that is, played upon similar principles, and with similar results? 4th. Had dominoes *either* become a device or substitute for cards in playing the game of "euchre," at the time ·defendant played at the game for which he is indicted, or were they in fact used in that single game, though never before, as a device or substitute for cards. It was the duty of the court, on referring these four questions of fact to the jury, to direct them that if, without any reasonable doubt, they should decide all these questions in the affirmative, then they ought to find the defendant guilty; otherwise, they ought to find him not guilty. It will be noticed, that the foregoing question numbered 4, is put or stated alternatively; and to prevent any misapprehension, it is proper to say, that if the jury decide either branch of said alternative question in the affirmative, that meets the requirements of the law, so far as·the said question is concerned.

We deem it unnecessary to go into any particular examination of any of the charges given or refused; because it is manifest that the four questions above stated by us were not referred to the jury by the court below; and because what we decide in this opinion will probably be sufficient to guide the action of the court below on another trial.

3. We are satisfied there was no error in sustaining the objection to the question put by the defendant to the witness. The effect of allowing the question to be put to and answered by him, would be to submit to the decision of the witness a point which the jury alone can try.

For the error in not referring to the jury the four questions of fact herein above stated, the judgment of the court below is reversed, and the cause remanded.