# Smith *v.* The State.

## *Indictment for Gaming.*

1. *Election; when prosecutor will be compelled to make.* — Although an indictment is so framed as not to designate the particular transaction, or act to which it relates, or contains several counts charging the offence to have been committed in different ways, it includes but one offence; and if the State offers evidence of more than one, the defendant may compel the prosecutor to elect on which he will proceed.

2. *Same.* — Election is compelled in such cases to prevent prejudice to the defendant by bringing in evidence of guilt of crimes for which he is not really indicted, and to avoid bolstering up a conviction on the offence charged by proof of other and different offences.

3. *Same.* — The principle has no application to a case where evidence is given of but a single well-defined criminal act done at a particular place, although such place, according to the testimony of different witnesses, may be stamped with the characteristics of one or more of the places at which gaming is prohibited.

4. *" Public place; " what is within meaning of section* 3620 *of the Revised Code.* — Any house to which all who wish can go night or day and indulge in gaming, is a "public place," within the meaning of the statute. The fact that it is used as a bedroom, kept locked so that no one can enter but by permission, and after surveillance from the inside, and otherwise invested with privacy, will not prevent the characteristic of a "public place" attaching to it, if it is frequented by all who wish to engage in the sports which the occupant there carries on, and for the indulgence of which he furnishes the appliances.

APPEAL from the Circuit Court of Lee.

Tried before Hon. J. E. COBB.

The appellant, A. J. Smith, was indicted and convicted for gaming, under an indictment based on § 3620 of the Revised Code, and pursuing the statutory form.

The room in which the playing took place was back of a bar room, on the same floor and under the same roof with it. The front room was used by one Elliott, for the sale of spirituous liquors. There was no connection between it and the back, there being a room in between which did not communicate with

either the rear or front room. The only means of communication between the room in which the playing occurred and the bar-room was by a passage on the side of the rooms, which had no doors connecting them. One Phillips leased the room from Elliott, and had entire control of it, keeping his bed there. After describing the room substantially as is stated above, the first witness for the State, one Clem, testified that about six months before the finding of the indictment defendant and six others played at a game of cards in the room. During the time of playing all the doors were closed, and no one could enter but by knocking and admission from the inside, but no one came in while the defendant and others were playing. The bill of exceptions recites that some of this evidence was drawn out by cross-examination.

The State then introduced another witness, one Condon, and proposed to prove by him that the room about which the witness Clem testified, and in which the playing took place, was a room which the public frequented. The defendant objected, on the ground that the State " had offered evidence tending to show that the playing was done at a house where spirituous liquors were sold," &c., and had thereby elected to contend for a conviction for that offence, and " could not thereafter introduce evidence of a playing at any public place, made public by persons frequenting it."

The court overruled the objection, and permitted the witness to testify " respecting the character of the rooms as being frequented by the public," and defendant duly excepted. This witness testified that Phillips was a professional gambler, and kept his bed and a gaming table in the room. Any one " known to be a sportsman," or who desired to play cards, could gain admission by knocking at the door, and making known that he desired a game. The door was kept locked, and no one could enter while playing was going on, except after knocking and getting permission from the inside. As many as five or six would go there and play at a time, and frequently did play in the room. Witness was present at the time testified to by the witness Clem, and his testimony about the playing, in which the defendant took part, was substantially the same as Clem's. The State having closed, the defendant moved the court to compel the solicitor to elect the character of place, under § 3620 of the Code, for playing at which he would seek a conviction. This motion was overruled, and the defendant excepted.

The defendant then requested the court to give two written charges, which the court refused, and the defendant duly excepted. The first of these charges directed the jury not to convict for a playing at a " public place," if they believed that the playing took place in the room described, and that at the

time of the playing the doors were locked, and no one could enter but by permission from the inside. The second charge asserted, in substance, that there could be no conviction unless defendant played at cards or dice, "in some room or house, or some public place, to which the general public had a right to enter, at the time of the playing, and go as the public; or that the room or place had been made public by general invitation, allowing the general public to enter unbidden and without restraint; or that the surrounding circumstances were such as to induce the public so to consider it."

WILLIAM H. BARNES, for appellant.

JOHN W. A. SANFORD, Attorney General, contra.

BRICKELL, C. J. — The indictment is in the form prescribed by the Code, charging gaming at the several places prohibited by the statute, disjunctively. Such an indictment does not include more than one offence ; and if the State offers evidence of more than one, the defendant may compel an election of one or the other as the single offence for which he is to be prosecuted. Or if the State offers evidence of a particular act of gaming, at a particular place, so as to identify and individualize it before the minds of the jury, an election to prosecute for that particular act is made, which cannot be subsequently waived, and another and distinct act proved as ground of conviction. *Elam* v. *State*, 26 Ala. 48 ; *Cochran* v. *State*, 30 Ala. 542 ; *Hughes* v. *State*, 35 Ala. 351.

No case for an election was presented under the evidence disclosed in the record. The evidence was only of one act of gaming, at a particular place. No attempt was made to prove any other. The first witness introduced, in describing the place at which the gaming occurred, stated that it was in the same building with a retail liquor saloon, but separated from it, and was rented by and under the control of a different person. Some of the evidence was elicited on cross-examination. The defendant insisted the State, by the introduction of this evidence, had elected to proceed for gaming at a storehouse or place where spirituous liquors were sold, and could not subsequently offer evidence that the place of playing was a public house, or a public place. The theory of the principle on which the public prosecutor (when an indictment is so framed as not to designate the particular transaction or act to which it refers, or contains several counts charging the offence to have been committed in different ways) is compelled to elect on what count of the indictment, or the particular transaction or act exhibited in proof, for which he will proceed, is the prevention of prejudice

[Smith *v.* State.]

to the defendant, in the eyes of the jury, by bringing against him evidence tending to show crimes for which he is not really indicted, and for which he is not finally to answer; to avoid building up and supporting a verdict of guilty in a prosecution for one offence, by evidence of defendant's guilt of another. The principle can have no application when evidence of but a single act or transaction is offered. It is applicable only when evidence is given of different and distinct transactions. Whether the gaming was at a public house, or a public place, or a house where spirituous liquors were sold, was the fact on which the guilt or innocence of the defendant depended. It was the fact which gave the color of criminality to the particular act of gaming. No prejudice could result to the defendant from evidence that it bore the character of all of these places. The dangers of a conviction of one offence by evidence that he had been guilty of another was not involved. No prejudice to him in the eyes of the jury could result, as would have resulted if evidence of his playing at other places had been allowed. He could not be uncertain as to the act of gaming for which a conviction was sought. Therefore no case for compelling an election by the prosecutor was presented. The only result of compelling the prosecutor to state the character he would endeavor to stamp on the place where the gaming occurred, would have been to give the defendant an undue advantage of acquittal, because of the error or mistake of the prosecutor as to the effect of the evidence he would offer. The evidence might prove the place of gaming a public house, or a public place, or a house where spirituous liquors were sold. Under an indictment charging the playing to have been at one of these places, evidence of playing at another could not be received. Not because the playing at the one is a different offence from playing at another, but because there is a variance between the allegation and proof of the manner in which the offence was committed. There is no authority for compelling a prosecutor to an election to prove an offence to have been committed in a particular manner, that a defendant may have an opportunity of claiming an advantage of a variance between the averment and evidence. There was no error in overruling defendant's motion for an order compelling the prosecutor to elect whether he would seek a conviction because the place of gaming was either a public house, or a public place, or a house where spirituous liquors were retailed. Until evidence was given or offered of different acts of gaming, no case for an election existed.

It is not easy to define what is a "public house," or a "public place," within the meaning of the statutes against gaming. The evil the statute proposed to suppress was gaming with cards, dice, or any device or substitute for either, under such

[Chatteaux v. State.]

circumstances as would tend to offend public morals, and to the temptation of the young and unwary into its corrupting practices. The construction given these terms must be. such as will subserve the legislative intent. Any house to which all who may wish can go, night or day, and indulge in gaming in its various forms, is a public place within the meaning of the statute. That its proprietor uses it as a bedroom as well as a gaming room, and that entrance can be gained only by knocking at the door, when it was opened from the inside, does not relieve it from the character of a public place. That character is stamped upon it, when one of the uses to which it is appropriated is gaming, and it is free of access to all who are known to engage in it. All such persons are invited to it by the use to which it is appropriated. It is not necessary the door should have been thrown open, and all persons indiscriminately, or, in the words of the bill of exceptions, the " general public," allowed to enter at pleasure. The greater the air of privacy and secrecy which can be given to the place, the more effectual is the lure ; and the place when frequented for the purposes of gaming is within the evil the statute proposes suppressing. It is common to all who would gratify the passion gaming engenders and stimulates, and this is publicity. A lawyer's office cannot be said to be a place to which the general public, or all persons indiscriminately, are invited, or have a right to go. Nor is the office of a physician such a place. Each are places of business in which each pursues his avocation ; clients are invited to the one, and patients to the other. Each are within the statutory prohibitions, as this court has decided. The house a gambler devotes to gaming, and in which he keeps the appliances of his occupation, open to all who will engage in his sports, no matter with what seeming privacy he may invest it, is a public place within the statute. If it was not, the statute would be illy adapted to the suppression of the evil against which it is directed. The circuit court did not err in refusing the charges requested, and its judgment is affirmed.