# Adler *v.* The State.

# Pause *v.* The State.

# Simon *v.* The State.

*Indictments against Retailers of Spirituous Liquors.*

1. *Constitutionality of act of March 18, 1875, "to render more explicit and to provide for the better enforcement of the provisions of law in reference to the sale or giving away of spirituous, vinous, or malt liquors."*—The act approved March 18, 1875, entitled "An act to render more explicit and to provide for the better enforcement of the provisions of law in reference to the sale or giving away of spirituous, vinous, or malt liquors in this State" (Sess. Acts 1874–5, p. 280), is not violative of the constitutional provision, contained in the second section of the fourth article, which declares that "each law shall contain but one subject, which shall be clearly expressed in its title."

2. *Judicial knowledge of meaning of words, and of Webster's Dictionary.*—The court will take judicial notice of the meaning of the words "*malt liquor*," as used in a penal statute, and may, in a proper case, give its definition in charge to the jury; but it will also take judicial notice that "*Webster's Unabridged Dictionary*" is a standard authority as to the meaning of English words, and may permit his definition of those words to be given in evidence to the jury.

3. *Selling liquor to minor; constituents of offense.*—A criminal intent being an essential element of a criminal offense, a conviction can not be had under the statute prohibiting the sale of spirituous liquors to minors, if the sale was made by the defendant under the honest (though mistaken) belief that the minor had in fact attained his majority; but, whether the sale was made *bona fide*, under this honest belief, is a question of fact for the determination of the jury, under appropriate instructions from the court.

4. *Same; consent of father.*—The consent of the father, given to his minor son, that he might drink lager beer, or other kind of liquor, affords no excuse to the person who sells or gives it to him.

5. *Same; alternative averments as to kind of liquor sold.*—To authorize a conviction under an indictment for selling "vinous or malt liquor" to a minor, the sale being clearly proved, and that the liquor sold was either vinous or malt, it is not necessary that the jury should, by their verdict, find whether the liquor was vinous or malt ; and a charge asserting the contrary proposition is properly refused.

6. *Same ; what are "vinous liquors."*—Vinous liquors, as the term is used in this statute, *ex vi termini*, mean liquor made from the juice of the grape.

FROM City Court of Montgomery.

Tried before Hon. JOHN A. MINNIS.

These three cases, though decided together, because they presented substantially the same questions, were brought up on separate records, and were argued and submitted at different times.

In the case of *Leopold Adler*, the indictment contained five counts; but the jury, by their verdict, found the defendant guilty under the third count only, which charged that he "did sell to one Silas Berry, a minor, spirituous, vinous, or malt liquor, without the requisition of a physician for medicinal purposes." On the trial, as appears from the bill of exceptions, Silas Berry was introduced as a witness by the State, and testified, "that he was under twenty-one years of age at the time of the trial; that the defendant, within twelve months before the finding of the indictment, in the city and county of Montgomery, sold him a glass of lager beer; and that he did not have the requisition of a physician therefor for medicinal purposes, and did not have the consent of his father to buy or drink the same. The defendant offered to introduce evidence that, before the sale of said lager beer to the witness, Berry, he, witness, had told several persons, out of the defendant's bar-room, that he was twenty-one years old, and they had told this to the defendant before the said sale; but the court, on the objection of the solicitor, refused to allow this evidence to go to the jury; to which the defendant excepted. The defendant introduced evidence, also, that said Berry, before the sale of said lager beer to him by the defendant, told persons in the defendant's bar-room, where said lager beer was sold to him, that he was twenty-one years old; but there was no positive evidence that, before said sale, defendant had heard him say so, or had been told by others who heard him say so."

"For the purpose of showing that lager beer is a malt liquor, the solicitor offered in evidence *Webster's Unabridged Dictionary*, and the definition therein contained of the words 'malt liquor.' It was admitted by the defendant that said book was a standard work of English words and their definitions; but he objected to said evidence, on the ground that it was not competent evidence to ascertain the meaning of the words 'malt liquors' as used in the statute; and also because there was no definition of lager beer read to the jury from said book, or elsewhere, and that the definition of 'malt liquor' given in said book did not tend to show that lager beer was a malt liquor. The court overruled the objections, and allowed the book to be read to the jury; to which the defendant excepted.

(3)

"The defendant asked the court, in writing, to charge the jury, that if they believed, from the evidence, that the witness Berry, before he bought the lager beer from Adler, told said Adler that he was twenty-one years old, or told any person in Adler's place of business, who communicated it to said Adler before the sale to said Berry; and that Adler believed from this that said Berry was twenty-one years old, and had no reason to doubt it,—then the defendant could not be convicted; and that the defendant need not introduce positive evidence of these facts, but, to ascertain their truth, the jury may take into consideration the circumstances of the case, the relations between Adler and the persons to whom Berry told this in his place of business, and all other facts which tend to throw any light on the subject. The court refused to give this charge, and the defendant excepted to its refusal."

In the case of *Julius Pause*, the indictment also contained five counts; and there was a verdict of "guilty under the fifth count only," which charged that the defendant "did sell, or give away, to one Thomas Cowles Wilson, a minor, spirituous, vinous, or malt liquor, without the requisition of a physician for medicinal purposes." On the trial, as appears from the bill of exceptions, the State proved by said Thomas Cowles Wilson, that the defendant sold him a glass of lager beer within the time covered by the indictment; that he was under twenty-one years of age at that time, and that he did not have the requisition of a physician for medicinal purposes. To show that lager beer is a malt liquor, the solicitor offered in evidence the definition of 'malt liquor' as found in *Webster's Unabridged Dictionary;* to which the defendant objected; but the court overruled his objection, and allowed the same to be read in evidence to the jury; to which action of the court the defendant excepted. The solicitor introduced other evidence that lager beer is a malt liquor. There was evidence, also, that lager beer is not a malt, but a vinous liquor; that it was not made from the juice of the grape, but was called a vinous liquor, because it underwent what is called a vinous fermentation, similar to that which the juice of the grape undergoes in making wine ; and there was other evidence, also, that there are various other kinds of beer which are not malt liquors—that is, not made from malt, and in which malt forms no part."

The defendant requested the following charges in writing:

"1. If the jury are in reasonable doubt, from the evidence, whether lager beer is a malt liquor or a vinous liquor, they must acquit the defendant: they can not convict, because

the evidence proves that it is the one or the other, but they must be satisfied which kind of liquor it is.

"2. To convict the defendant, the jury must be satisfied from the evidence, beyond a reasonable doubt, that lager beer is a malt liquor, or a liquor made from the juice of the grape; and the fact that various kinds of beer are malt liquors, is not sufficient to prove that lager beer is a malt liquor, especially if there is satisfactory evidence before them that there are other kinds of beer which are not malt liquors.

"3. The jury must be satisfied from the evidence, beyond all reasonable doubt, that lager beer is a malt liquor, or a vinous liquor; that the legislature, in using the words 'vinous liquors' in the statute, meant liquor made from the juice of the grape; and if they believe from the evidence that lager beer is not made from the juice of the grape, and they are not satisfied from the evidence, beyond all reasonable doubt, that it is a malt liquor, then they must acquit the defendant."

The court refused each of these charges, and the defendant excepted to their refusal.

In the case of *Moritz Simon,* the defendant was indicted and convicted for selling liquor to one W. H. Rugely, a minor, without the requisition of a physician for medicinal purposes. On the trial, the said Rugely testified, that he had bought a glass of lager beer from the defendant, in the city of Montgomery, within twelve months before the finding of the indictment; that he was not then twenty-one years old, and did not have the requisition of a physician for medicinal purposes, "but had the consent of his father to drink lager beer whenever he wanted it." On this evidence, the defendant requested the court to charge the jury, "that if the witness, Rugely, at the time he bought the lager beer from the defendant, had the consent of his father that he might drink lager beer, the defendant can not be convicted." The court refused to give this charge, and the defendant excepted to its refusal. An exception was also reserved to the admission of *Webster's Dictionary,* as in the other cases.

JOHN A. ELMORE, V. S. MURPHEY, and CLOPTON, HERBERT & CHAMBERS, for the defendants. 1. The statute under which the indictments were found is unconstitutional. The subject of that statute, as expressed in its title, is the existing "provisions of law" relating to the sale of liquors; and the declared purpose of the statute is to render these provisions more explicit, and to provide for their better enforcement. This title would indicate a statute declaratory and revisory

of existing laws—a statute which would remedy the declared defects, want of explicitness, and insufficiency in the manner of their enforcement. Yet the statute, in fact, only creates a new and distinct offense; and there is nothing in it which looks to the enforcement of the existing laws. There is no connection between the title and the subject of the act. The title is deceptive—it is a misnomer; and the act itself is a total departure from the title.—*Tuskaloosa Bridge Co. v. Olmstead,* 41 Ala. 9, 17; *Falconer v. Robinson,* 46 Ala. 340–46; *Walker v. The State,* 49 Ala. 329; *Moses v. Mayor of Mobile,* 52 Ala. 212; *Ex parte Conner,* 51 Geo. 571; *Brieswick v. Mayor of Brunswick,* 51 Geo. 643. The title, moreover, embraces more than one subject—all the existing provisions of law in reference to the sale of liquor, which are variant and distinct subjects.—*Mok v. Detroit B. & L. Association,* 30 Mich. 515.

2. A wrongful act, and a wrongful intent, must both concur to constitute a crime. If the defendant, Adler, honestly believed that the person to whom he sold the lager beer was twenty-one years old, he ought to have been acquitted.— Bishop on Crimes, 1021; *Gordon v. The State,* 52 Ala. 308; *Stern v. State,* 53 Geo. 229; 14 Indiana, 403; *McGuire v. The State,* 7 Humph. 54.

3. The first charge asked by the defendant, Pause, ought to have been given. The indictment charged the sale of three different kinds of liquor, in the disjunctive; which is the same, in legal.effect, as if there had been three counts, charging three different offenses. Under such an indictment, a verdict of guilty, not specifying the particular count or offense, can not be supported: it is only saying that the jury find the defendant guilty of one or the other of the offenses named, but they can not say which one.

4. The other charges asked by the defendant, Pause, when closely analyzed, assert such plain elementary principles, that it is difficult to see on what ground they were refused.

5. The court erred, under the facts shown by the record, in admitting Webster's Dictionary as evidence before the jury.

John W. A. Sanford, Attorney-General, for the State. 1. The title of the act under which these indictments were found, indicates its purpose with sufficient definiteness and precision. It is simply to render the policy of the State more intelligible, in regard to the sale of liquor to minors. When there is nothing in the body of an act repugnant to its title—when all its provisions are germane to the object in view of the legislature, this court will not declare it to be unconstitutional, because every section is not fully indicated

by the title.—*Ex parte Pollard*, 40 Ala. 99 ; *Ex parte Hickey*, 52 Ala. 228–30 ; *Key v. Jones*, 52 Ala. 246.

2. Webster's Dictionary is a standard authority as to the meaning of English words. There was no error in allowing it to be read to the jury for the purpose declared.—Starkie on Evidence, Sharswood's ed., 17 ; *Blair v. The State*, 52 Ala. 343 ; *Rosenbaum v. The State*, 33 Ala. 354 ; *Stoudenmeier v. Williamson*, 29 Ala. 558.

3. What the defendant had heard, or had been told, as to ·the age of the person to whom he sold the lager beer, was not competent evidence. Even the affidavit of the person to whom the liquor was sold, that he was of lawful age, when in fact he was not, would have been no defense to the prosecution.—*Cotten v. Rutledge*, 33 Ala. 110–14.

4. The permission given by the father to his minor son, that he might drink lager beer, does not take the case of Simon out of the plain letter of the statute, which only authorizes a sale upon the requisition of a physician.

5. The several charges asked by the defendant, Pause, were properly refused. The reasonable doubt in the minds of the jury, which will acquit the accused, is a doubt of his guilt, and not a doubt as to the precise nature of the liquor which he sold. The second charge was an invasion of the province of the jury.—*Alsobrooks v. The State*, 52 Ala. The third charge devolved upon the jury the duty of ascertaining the intention of the legislature from the evidence in this case ; or, if this was not its object and effect, it was properly refused, because it is obscure, involved, and having a tendency to mislead the jury.

STONE, J.—The act of the legislature under which these several indictments were found—Pamph. Acts 1874–5, p. 280— is assailed as violative of the second section of the fourth article of the constitution of 1868, which declares, that "each law shall contain but one subject, which shall be clearly expressed in its title."

Speaking of this provision, we, in *Boyd v. The State*, at the last term, after quoting approvingly the reasons given by Mr. Cooley for incorporating this clause in constitutions, said : "But, while giving full effect to the provision quoted above, in its admitted purpose to prevent 'log-rolling,' 'surprise' and 'fraud,' we must be careful, in the application of this rule, not to allow ourselves to be carried so far as unduly to cripple and embarrass legislation. It is not essential that the title of a statute shall define or declare the subject with the most precise accuracy."—See, also, *Ex parte Pollard*, 40 Ala. 99 ; *Key v. Jones*, 52 Ala. 238,

The Louisiana constitution contained a clause similar to ours, quoted above. The legislature, under the title of "an act to provide a homestead for the widow and children of deceased persons," enacted that the widow and minor child, or children, should, in certain conditions, receive $1,000 in money from the succession. The question was, whether this provision was expressed in the title. Chief Justice SLIDELL, delivering the opinion of the court, said: "We think the argument invokes an interpretation of the constitutional clause, that is too rigorous and technical. If, in applying it, we should follow the rules of a nice and fastidious verbal criticism, we should often frustrate the action of the legislature, without fulfilling the intention of the framers of the constitution. That intention has been repeatedly the subject of judicial comment. It was mainly to prevent that loose legislation which disgraced our statute books. The title of an act often afforded no clue to its contents. * * In carrying out this intention, as we are bound to do, our inquiries should be, whether, in the particular case, there has been a substantial compliance by the legislature with the command of the constitution, according to its fair and reasonable intendment;" and the court declared the act constitutional. *Succession of Lanzetti*, 9 La. An. 329.

In the case of the *State of Missouri v. Miller*, 45 Mo. 495, the court, speaking of the constitutional provision under discussion, said: "The courts in all the States, where a like or similar provision exists, have given it a very liberal interpretation, and have endeavored to construe it so as not to limit or cripple legislative enactments any further than was necessary, by the absolute requirements of the law."

In the case of the *State of Minnesota v. Gut*, the court said, "A strict adherence to its letter would seriously interfere with the practical business of legislation, and would frequently nullify laws not repugnant to its spirit or meaning." 13 Min. 349.

In *Brewster v. City of Syracuse*, 19 N. Y. 117, the court said, "The degree of particularity with which the title of an act is to express its subject, is not defined in the constitution, and rests in the discretion of the legislature."—See, also, *Town of Guilford v. Cornell*, 18 Barbour, 640; *Board of Supervisors v. Heenan*, 2 Min. 339; *Murphy v. Menard*, 11 Tex. 676; *Duncombe v. Prindle*, 12 Iowa, 1; *Haggard v. Hawkins*, 14 Ind. 299; *Brandon v. State*, 16 Ind. 197; Cooley's Const. Lim. 144, and note.

Under the rules above declared, we do not think the objection to the constitutionality of the act under discussion is well taken. True, the title does not clearly point to all the

[Adler v. The State ; Pause v. The State ; Simon v. The State.]

provisions of the act. The authorities above cited show that this is not necessary. It does, however, " clearly express " that " the sale or giving away of spirituous, vinous, or malt liquors," is the subject. Every provision of the statute falls within the scope of this general subject; and we hold that the court did not err, in deciding that this act is free from the objection urged against it.—*Olmstead v. Tuskaloosa Bridge Co.*, 41 Ala. 9.

2. We can perceive no good reason why a work of such standard authority as *Webster's Unabridged Dictionary* confessedly is, should not be used before a court or jury, whenever the meaning of an English word is brought in question. That it is a work of standard authority, is so widely known ; indeed, so universally acknowledged wherever the English language is spoken, that it must be classed among the facts judicially known.—See *Stoudenmeier v. Williamson*, 29 Ala. 558; *Merkle v. The State*, 37 Ala. 139 ; *Salomon v. State*, 28 Ala. 83 ; *Burdine v. Grand Lodge*, 37 Ala. 478. So, the court will take judicial notice of the meaning of the compound word "malt-liquor," found in the statute under which the present indictments were found.—*Mayor & Aldermen v. Winter*, 29 Ala. 651. What constituted malt liquor was a material inquiry in these cases. The court might properly have given the proper definition in charge to the jury. There was no error in placing before them the proper definition, as furnished in Webster's Unabridged Dictionary. The objection and exception taken in each of these cases to the reading in evidence of the definition of the term *malt-liquor*, as furnished in Webster's Unabridged Dictionary, could not have wrought any injury to defendants.

3. In the case of *Leopold Adler*, there was some evidence that the defendant, when he made the sale to Silas Berry, had been informed that the latter was twenty-one years old. If he, in good faith, believed such was the case, he was innocent of any intent to violate the law. In the case of *Gordon v. The State*, 52 Ala. 308, we said : "All crime exists primarily in the mind. A wrongful act, and a wrongful intent, must concur, to constitute what the law deems a crime." In that case, as in this, the offense charged was purely statutory, and *intent* was not expressly named as an ingredient of the offense. Still, this court held that, if the act were done in the honest, though mistaken, belief that the accused had reached the age which would render the act lawful, no crime was in fact committed. So, in this case, if Adler, in good faith, believed that Berry was twenty-one years old, the element of intent to commit the offense was wanting. Whether he did, in good faith, so believe, was a question for the jury, under an appro-

priate charge. We need scarcely add, that the fact, if such was the case, that Berry claimed that he was twenty-one years old, was only evidence to be weighed by the jury. Good faith in acting on such information and other evidence in the cause must, at last, furnish the test of innocence. *Prima facie*, if the defendant sold or gave spirituous, vinous, or malt liquor, to a minor, not having a physician's prescription authorizing it, under the statute, he was guilty. He was then brought within the letter of the statute. It was for him to show that he did not fall within its spirit, unless such inference arose out of the evidence offered against him. The charge asked in this case should have been given.

4. In the case of *Moritz Simon*, the charge asked should not have been given. The consent of the father, given to his minor son, that he might drink lager beer, affords no excuse to one who sells or gives it to him. In this case, no question is presented which authorizes us to inquire whether lager beer is or is not a vinous or malt liquor. The sufficiency of the evidence is not before us.

5. In the case of *Julius Pause*, three charges were severally asked and refused. The first asserts the proposition, that the jury must acquit, even if convinced beyond a reasonable doubt that the defendant sold or gave away vinous or malt liquors, unless the finding goes further, and ascertains to which of the two classes, vinous or malt, the beer belonged. This is too narrow a view of sections 4123, 4125 of the Revised Code. Those and kindred sections had two aims: to dispense with cumbrous prolixity in pleading, and to avoid, to the extent of their terms, acquittals on purely technical grounds. If the beer belonged to either class, it is immaterial which. The offenses are the same, the punishment the same. This charge was rightly refused.—*Smith v. State*, 52 Ala. 384.

6. Charges numbered two and three assert, substantially, the same legal proposition. The jury convicted on only one, the fifth count in the indictment. Evidence was introduced before the jury of a sale of lager beer. This was an election by the State to prosecute the defendant for that act; and the conviction on the one count must be referred to that evidence.—*Cochran v. The State*, 30 Ala. 542. These charges should have been given. Vinous liquor, *ex vi termini*, means liquor made from the juice of the grape. The charges, properly construed, assert no more than the familiar principle of the criminal law, that to authorize a verdict of guilty, the jury must be convinced beyond a reasonable doubt that the defendant did the act denounced in the statute as criminal.

The judgment in the case of Moritz Simon is affirmed. In

[Childs v. The State.]

the cases of Leopold Adler, and Julius Pause, the judgments are reversed, and the causes remanded. Let the prisoners remain in custody, until discharged by due course of law.