Gaston, J.
On the trial it was insisted by the defendant’s counsel, and the judge was required so to instruct the jury, that if the facts charged' in the indictment were all true, they nevertheless constituted in law no offence of which they could find the defendant guilty. His Honor refused this prayer, and instructed the jury, that, il the facts charged were proved to their satisfaction, it was their duty to find him guilty. The same ground of defence has been taken here by way of a motion in arrest of judgment; but we are of opinion that in whatever form presented, it is not tenable.
The argument is, that the offence of riding or going about armed with unusual and dangerous weapons, to the terror of the péople, was created by the statute of Northampton, 2nd Edward the 3d, ch. 3d, and that, whether this statute was or was not formerly in force in this State, it certainly has not been since the first of January, 1838, at which day it is declared in the Revised Statutes, (ch. 1st, sect. 2,) that the statutes of England or Great Britain shall cease to be of force and effect here. We have been accustomed to believe, that the statute referred to did not create this of-fence,(but provided only special penalties and modes of proceeding for its more effectual suppression, and of the correctness of this belief we can see no reason to doubt. All the elementary writers, who give us any information on the subject, concur in this representation, nor is there to be found in them, as far as we are aware of, a dictum or intimation to the contrary. Blackstone states, that “ the offence of riding or going armed with dangerous or unusual weapons, is a *421 ■crime against the public peace, by terrifying the good people of the land ; and is particularly prohibited by the statute of Northampton, 2 Edward 3d, ch. 3d, upon pain of forfeiture of the arms, and imprisonment during the King’s pleasure.” 4 Bl. Com. 149. Hawkins, treating of offences against the public peace under the head of “Affrays,” pointedly remarks, “ but granting that no bare words in judgment of law carry in them so much terror as to amount to an affray, yet it seems certain that in some cases there may be an affray, where there is no actual violence, as where a man arms himself with dangerous and unusual weapons in such a manner, as will naturally cause a terror to the people, which is said to have been ahoays an offence at common law and strictly prohibited by many statutes.” Haw. P. C. B. 1, ch. 28, sect. 1. Burns and Tomlyns inform us, that, this term “ Affray,” is derived from the French word “ ef-frayer” to affright, and that anciently it meant no more, “ as where persons appeared with armour or weapons not usually worn, to the terror of others.” Burn’s Yerbo “ Affray.” Dierdo, It was declared by the Chief Justice in Sir John Knight’s case, that the statute of Northampton was made in affirmance of the common law. 3 Mod. Rep. 117. And this is manifestly the doctrine of Coke, as will be found on comparing his observations on the word “ Affray,” which he defines (3d Just. 158,) “a public offence to the terror of the King’s subjects, and so called because it affrighteth and maketh men afraid, and is enquirable in a leet as a common nuisance,” with his reference immediately thereafter to this statute, and his subsequent comments on it (3d Inst. 160,) where he cites a record of the 29fh year of Edward 1st, shewing what had been considered the law then. Indeed, if those acts be deemed by the common law crimes and misdemeanors, which are in violation of the public rights and of the duties owing to the community in its social capacity., it is difficult to imagine any which more unequivocally deserve to be so considered than the acts charged ujion this defendant. They attack directly that public order and sense of security, which it is one of the first objeets of the com- *422 nion law, and ought to be of the law of all regulated societies,to preserve inviolate — and they lead almost necessarily to actual violenee. Nor can it for a moment be supposed, that such acts are less mischievous here or less the proper subjects of legal reprehension, than they were in the country of our ancestors. The bill of rights in this State secures to every man indeed, the right to “ bear arms for the defence of the State.” While it secures to him a right of which he cannot be deprived, it holds forth the duty in execution of which that right is to be exercised. If he employ those arms, which he ought to wield for the safety and protection of his country, to the annoyance and terror and danger of its citizens, he deserves but the severer condemnation for the abuse of the high privilege, with which he has been invested.
It was objected belo w, and the objection has been also urged here, that the eourt erred in admitting evidence of the declarations of the defendant, set forth in the case, because those, or some of them at least, were acknowledgments of a different offence from that charged. But these declarations were clearly proper, because they accompanied, explained, and characterized the very acts charged. They were not received at all as admissions either of the offence under trial, or any other offence. They were constituent parts of that offence.
It has been remarked, that a double-barrelled gun, or any other gun, cannot in this country come under the description of “ unusual weapons,” for there is scarcely a man in the community who does not own and occasionally use a gun of some sort. But we do not feel the force of this criticism. A gun is an “ unusual weapon,” wherewith to be armed and clad. No man amongst us carries it about with him. as one of his every day accoutrements — as a part of his dress— and never we trust will the day come when any deadly weapon will be worn or wielded in our peace loving and law-abiding State, as an appendage of manly equipment.— But although a guu is an “unusual weapon,” it is to be remembered that the carrying of a guu ‘per se constitutes no *423 offence. For any lawful purpose — either of business or musement — .the citizen is at perfect liberty to carry his gun. It is the wicked purpose — and the mischievous result — which essentially constitute the crime. He shall not carry about this or any other weapon of death to terrify and alarm, and in such-manner as naturally will terrify and alarm, a peaceful people.
Oour opinion is, that there is no error in the sentence below. This decision will be certified to the Superior Court of Anson accordingly.
Per Curiam.. Ordered accordingly..