GAMBLE *et al. v.* THE STATE (six cases).

1. This court can not deal with the assignments of error made in an amendment
   to a motion for a new trial which has upon it an entry to the effect that it has
   been allowed by the trial judge, with nothing else to indicate an approval of
   its grounds.
2. Where persons are accused of an affray and there is no evidence that the
   fighting occurred at a public place, a verdict of guilty is contrary to law.

Submitted May 20, — Decided July 17, 1901.

Accusations of affray.   Before Judge Calhoun.   Criminal court
of Atlanta.   April 6, 1901.

*A. R. Bryan, S. C. Crane*, and *F. R. Walker*, for plaintiffs in
error.   *E. R. Black, solicitor*, contra.

SIMMONS, C. J.   Six persons were separately accused of an af-
fray alleged to have been committed at a certain time and place in
Fulton county, Georgia.   The cases were tried together, and the
defendant in each case was found guilty.   Each defendant moved
for a new trial, upon the grounds that the verdict was contrary to law
and evidence and without evidence to support it.   Subsequently
five of these motions were amended by adding special grounds.
The court overruled all of the motions for new trial, and each mov-
ant excepted to the order overruling his motion.   The cases were
argued at the same time in this court, and will be considered to-
gether.

1. In each case in which an amendment was made to the orig-
inal motion for new trial, the amendment was "allowed" by the

court and ordered filed, but further than this there is nothing in the record or in the bill of exceptions to indicate an approval of the grounds of the amendment. These special grounds are, therefore, not sufficiently verified to authorize this court to deal with them. *Merritt* v. *Merritt*, 113 *Ga.* 569.

2. From the evidence in the records it appears that certain officers of Fulton county, learning that there would be a dance at a certain place in the county, went to that place. As they approached the house they heard several pistol shots, and saw the man who had done the shooting run off. They also saw five men (among them four of the defendants) engaged in a general fight. These men were placed under arrest. Then another of the defendants had a fight with a certain person in the house, and they were arrested. The remaining defendant then became engaged in a fight with still another person, and they also were placed under arrest. This fighting was attended with much noise and disorder. It took place in the front room and on the front porch of a house which had been rented for the occasion. From the briefs of evidence in some of the cases, it would appear that the house was a vacant one; from those in the others, that the house was composed of two rooms and that the back room was occupied by a negro family. The house was in the country, was one of a row of negro houses, and was about 200 yards from any other residence. It was "near" a public road, which was in front of it, but what was the distance from the road, and whether the defendants fighting could be seen or heard from the road, the evidence does not disclose.

The code section under which the defendants were accused defines an affray as "the fighting of two or more persons in some public place, to the terror of the citizens and disturbance of the public tranquillity." Penal Code, § 355. Thus in this State, as at common law, there can not be a conviction for an affray unless the fighting occurs in a public place. See 4 Bl. Com. 145; 2 Bish. New. Crim. Law, §§ 1, 2; Bish. St. Cr. (3d ed.) § 298; 2 McClain Cr. Law, §§ 1006, 1008; State *v.* Heflin, 8 Humph. 84. Unless the defendants were fighting in a public place, their convictions were illegal. The house in which they fought appears to have been a private one, rented by the defendants. There is no suggestion in the evidence that it possessed at ordinary times any of the elements which characterize a public place. It is true it was near

a public road, and that a public road is, prima facie at least, a public place and may give that character to places in sight and hearing from the road. State *v.* Moriarty, 74 Ind. 103; Carwile *v.* State, 35 Ala. 392; Henderson *v.* State, 59 Ala. 89; Ford *v.* State (Ala.), 26 So. 503. It is also true that a road which, though not a regular public highway, is used and traveled is a public place. Mills *v.* State, 20 Ala. 86. But the evidence in the present case fails to show how "near" or how far it was from the road to the house, or that the defendants could be seen or heard from the road. So far as appears, the house may have been quite a distance from the road and so situated that the defendants could not have been seen or their noise heard by persons in the road. Under such circumstances the existence of the road can not be held sufficient to supply the necessary element of a public place. See Queen *v.* Hunt, 1 Cox C. C. 177; Gerrells *v.* State (Tex.), 26 S. W. 394; Graham *v.* State, 105 Ala. 130. The judge below seems to have taken the position that the place was made public, for the time being, by the gathering of persons there for the purpose of dancing. This, we think, is not tenable. A place ordinarily private may become public, within the law of affrays, by being thrown open to the public upon a particular occasion. Sewell *v.* Taylor, 7 C. B. n. s. 160; Turbeville *v.* State, 37 Tex. Cr. Rep. 145. Permitting only a certain class of the public to enter will not prevent the place from assuming the character of a public place. Smith *v.* State, 52 Ala. 384; Nickols *v.* State, 111 Ala. 58. It has been held that an assemblage may make a place temporarily public (Finnem *v.* State, 115 Ala. 106); but it has also been held that the assemblage of a few persons at a place not open to the public will not so operate (Taylor *v.* State, 22 Ala. 15; Coleman *v.* State, 20 Ala. 51), nor the assemblage of persons at a social party by express invitation (State *v.* Sowers, 52 Ind. 311). "In general the place must be one to which people are at the time privileged to resort without an invitation." Bish. St. Cr. (3d ed.) § 298. In the present case it does not appear how many persons attended the dance or were in and about the house at the time of the fighting. The evidence does not show certainly the presence of more than a dozen or fifteen people. So far as appears, the dance was entirely private and none allowed to attend except by express invitation or previous arrangement. We believe, therefore, that the place was

not shown to be so open to the general public or to any portion of ·the public as to constitute it a public place within the meaning of the law of affrays.   So believing, we are constrained to hold that the evidence failed to make out this essential element of an affray that the fighting was in a public place, and that the verdicts of guilty were contrary to law.

Judgment in each case reversed.   All the Justices concurring.