IN THE MATTER OF: MARGARET KAY MAY, DOB: 06-19-89

No. 566A02

(Filed 22 August 2003)

**Juveniles— delinquency—affray—public place—terror**
The trial court erred by adjudicating a juvenile delinquent based on its determination that the juvenile had committed the offense of common law affray arising out of an altercation between two juvenile residents at a group home, because: (1) the evidence failed to establish that an altercation in which the juvenile participated occurred in a location that satisfies the requisite "public place" element; (2) there were no individuals passing by the property who were within view or earshot of the altercation; and (3) the four witnesses, two who were there by virtue of their employment and the other two by virtue of having been assigned to live there, did not qualify as persons who might transform the facility from a private place into a public place since such altercations do not cause "terror to the people" when their presence is akin to that of family members who bear witness to a fight between siblings on the grounds of the family residence.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 153 N.C. App. 299, 569 S.E.2d 704 (2002), reversing an order entered 28 August 2001 by Judge Ernest J. Harviel in District Court, Alamance County. Heard in the Supreme Court 8 April 2003.

**IN RE MAY**

[357 N.C. 423 (2003)]

*Roy Cooper, Attorney General, by Kathleen U. Baldwin, Assistant Attorney General, for the State-appellant.*

*Staples Hughes, Appellate Defender, by Anne M. Gomez, Assistant Appellate Defender, for juvenile-appellee.*

BRADY, Justice.

The dispositive issue presented for review is whether the evidence presented at the hearing was sufficient to establish that an altercation in which the juvenile participated occurred in a location that satisfies the requisite "public place" element of the common-law criminal offense of affray. We conclude that the evidence fails to establish that the juvenile's conduct occurred in a qualifying "public place," and, as a consequence, we affirm the decision of the Court of Appeals.

The facts and circumstances of this case are undisputed. On 1 August 2001, in response to the report of an alleged fight, law enforcement officers were called to the grounds of the Methodist Home for Children (the Home), a group home for children in Alamance County. The juvenile, an eleven-year-old resident of the Home, was involved in an altercation with another juvenile resident.

Testimony presented at the hearing from two employees of the Home established that the altercation in question began as an argument between the two residents. According to the employees, the argument escalated into a physical confrontation that included pushing, shoving, grabbing, scratching, and pulling hair. Laura Jane Glascoss, a resident counselor at the Home and a witness to the altercation, testified that the fight began at an unspecified location on the front grounds of the Home and abated shortly thereafter. Ms. Glascoss further testified that the fight rekindled "after a pause" and that the second round of "shoving back and forth" had "fizzled out" before law enforcement arrived.

David Hughins, another employee of the Home, testified that he was working near the front of the Home when he heard "yelling" from the ground's "hill area" in the distance. Mr. Hughins initially thought that the noise was a consequence of residents playing together. From his vantage point, he could see four residents and Ms. Glascoss moving back toward the Home. Mr. Hughins further testified that as the group moved to within "a hundred feet" of him, he could see that two of the residents had begun fighting. He then ran toward the combatants and separated them. The two residents continued "running their

mouth[s] back at each other" as the group neared the front steps of the Home. The verbal assaults escalated into a new round of pushing and shoving. As the employees were not able to control the combatants, Mr. Hughins sought the intervention of law enforcement.

Mr. Hughins and Ms. Glascoss were the only witnesses to testify at the 23 August 2001 hearing. Neither of the two residents involved in the fight testified, and the juvenile presented no evidence on her behalf. The judge concluded that the juvenile had committed the common-law offense of affray and, accordingly, ruled that the State had proved the allegations contained in the juvenile petition beyond a reasonable doubt. The judge adjudicated the juvenile delinquent as defined by N.C.G.S. § 7B-1501(7). In the dispositional phase of the hearing, the judge ordered the juvenile to serve fourteen days in the Guilford Detention Center, with seven of those days stayed on the condition that the juvenile comply with the rules and regulations of the Home.

Upon appeal by the juvenile, a divided panel of the Court of Appeals reversed the ruling, holding that the evidence was insufficient to establish that the common-law offense of affray had occurred. *In re May*, 153 N.C. App. 299, 303, 569 S.E.2d 704, 708 (2002). The Court of Appeals concluded that there was insufficient evidence demonstrating that the altercation occurred in a public place—an essential element of an affray. The court reasoned that the altercation in question occurred on private property, not in a location open to the public. *Id.*

On appeal to this Court, the State contends that the inquiry into what constitutes an affray should not be limited to determining whether the site involved private or public property. According to the State, a more expansive inquiry would yield a finding that an affray had, in fact, occurred in the instant case. While we are unpersuaded by the State's argument that an affray occurred in the instant case, we determine that the Court of Appeals' narrow analysis of what constitutes a "public place" for the purpose of defining an affray merely contributes to what is already a murky area of the law. The concerns raised by the State therefore prompt us to clarify our law regarding the common-law offense of affray.

## HISTORY AND ELEMENTS OF THE LAW OF AFFRAY

The common-law offense of affray has a long history, with American origins dating back to the eighteenth century and before.

IN RE MAY

[357 N.C. 423 (2003)]

Historically, the essential elements of affray have proved remarkably durable, surviving through the ages without substantive change. *Compare In re Drakeford*, 32 N.C. App. 113, 118, 230 S.E.2d 779, 782 (1977) (describing the offense as a fight between two or more persons, in a public place, that causes terror to the people), *with* 1 William Hawkins, *A Treatise of the Pleas of the Crown* 134-40 (Morton J. Horwitz & Stanley N. Katz eds., Arno Press 1972) (1724) (same). However, whether emanating from North Carolina, other states, or even beyond our continental shores,[1] case law has failed to provide a clear and concise definition of a "public place" for purposes of establishing this essential element of an affray. This lack of clarity is reflected in the omission of the offense of affray in the *North Carolina Pattern Jury Instructions for Criminal Cases*. Also contributing to the confusion is the failure of case law to provide a means for determining whether the fight in question caused terror to the public—the offense's third essential element. Therefore, we examine the case *sub judice* with three goals in mind: (1) to establish the criterion to assess whether a fight's attendant facts and circumstances, if proved, satisfy the "public place" element of an affray; (2) to establish the criterion to assess whether a fight caused "terror to the people"; and (3) to apply the above-referenced criteria to the present case to determine if the State met its burden of proving all three elements of affray at the hearing.

An affray is defined at common law as a fight between two or more persons in a public place so as to cause terror to the public. *State v. Wilson*, 61 N.C. 237, 237 (1867) (per curiam); *see also State v. Huntly*, 25 N.C. 418, 421 (1843) (per curiam) (recognizing that the term "affray" is derived from the French word "*effrayer*," meaning to affright). Thus, in order to prove the offense, the State must prove beyond a reasonable doubt three essential elements of the crime: (1) that there was a fight between two or more persons; (2) that the fight occurred in a "public place"; and (3) that the fight caused terror to persons who qualify as members of the public.

---

1. Courts and legal scholars from around the globe have also struggled with the issue of establishing the elements of an affray. For example, in the United Kingdom, where the common-law crime has been recognized for nearly 500 years, vigorous debate over what constitutes a qualifying "public place" persists to this day. As in the instant case, much of the argument centers on developing a means for determining if a particular place was public and if witnesses to the altercation were subject to its terror. *See, e.g.*, A.T.H. Smith, *Metamorphosis of Affray*, 136 New L.J. 521 (1986); *Constituent Elements of Affray:* Cobb v. DPP, 57 J. Crim. L. pt. 2, at 133 (Neil McKittrick ed., May 1993).

**IN RE MAY**

[357 N.C. 423 (2003)]

Neither of the parties in the instant case takes issue with the hearing judge's conclusion that a fight took place or that it involved two persons—the juvenile and another resident of the Home. As a consequence, this, the first element of affray, is deemed satisfied and need not be further considered.

This Court has not specifically defined the parameters of what constitutes a "public place" for purposes of establishing the second element of an affray. However, examples taken from our case law indicate that the offense may be committed in two distinct types of locales that qualify as "public places." The first type includes places generally considered public by the nature of their use or intended use. Parcels and places owned and/or maintained by either a government entity or a private business and that are open to public traffic are included in this grouping. Examples include roads, streets, highways, sidewalks, shopping malls, apartment complexes, parks, and commons. Cases assessing alleged affrays that occurred in such locations have concluded, without exception, that they satisfy the "public place" requirement. *See, e.g., State v. Griffin*, 125 N.C. 692, 34 S.E. 513 (1899) (indicating that a road could be considered a qualifying public place); *Huntly*, 25 N.C. 418 (concluding that an affray occurred where the facts indicated that defendant was on a county highway).

The second type of "public place" for purposes of proving an affray is private property that is situated near enough to public thoroughfares that citizens using such thoroughfares could bear witness to the altercation. Although no precise definition of such qualification has emerged from our state's case law, examples that have been held to satisfy the "public place" requirement include private property within view or earshot of a sidewalk or street. *See, e.g., State v. Gladden*, 73 N.C. 150 (1875) (indicating that a grocery store, a private business establishment, and an adjoining commercial stable, all of which were situated near a public roadway, would have qualified as a public place for purposes of an affray).[2] The above-

2. Although the Court of Appeals' dissent in the instant case cites to *State v. Fritz*, 133 N.C. 725, 45 S.E. 957 (1903), as an example of private property serving as a public place for purposes of affray, *May*, 153 N.C. App. at 304, 569 S.E.2d at 708 (Hunter, J., dissenting), we note that the facts and circumstances in *Fritz* fail to reflect that the fight took place on private property or that it had occurred within view or earshot of a public street or thoroughfare. In its summary of the facts and circumstances, the Court in *Fritz* described the fight as taking place at "a certain corner tree." *Fritz*, 133 N.C. at 726, 45 S.E. at 958. Neither the location of the tree nor its relation to other landmarks, private or public, was further specified.

noted examples generally comport with the treatise-based definitions of "public places" for purposes of an affray. *See, e.g.,* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 480 (3d ed. 1982) (noting that the term "public place" includes "any place open to public view and close enough to the public so that fighting there may tend to cause public alarm").

As for the third element of affray—that the fight caused "terror to the people"—prior cases have established that such terror may be demonstrated where the fight at issue " 'affrighteth and maketh men affraid.' " *Huntly,* 25 N.C. at 421 (quoting 3 Edwardo Coke, *Institutes of the Laws of England* *158). Thus, it is clear that actual fear experienced by members of the public satisfies the terror element. In *Fritz,* 133 N.C. 725, 45 S.E. 957, this Court implied that *members of the public* were assumed to be terrorized by virtue of their presence at an alleged affray, even though there was no evidence that any of the seven spectators had actually been placed in peril. This Court, however, has not definitively resolved the question of whether "terror to the people" may simply be presumed if the fight occurs in a qualifying public place, even if no members of the public were there to witness the event. Other states that have approved such presumed terror include Alabama, *see Carwile v. State,* 35 Ala. 392, 394 (1860) (concluding that an affray occurred where the fight took place at a location that could be seen from the street), and South Carolina, *see State v. Sumner,* 36 S.C.L. 53, 53 (S.C. Ct. App. 1850) (indicating that the affray in question took place "in the corporate limits" of a city).

## APPLICATION OF THE LAW OF AFFRAY TO THE INSTANT CASE

The undisputed evidence presented at the hearing showed that the juvenile fought with a fellow juvenile resident on the grounds of the Home where the two were living in August 2001. As indicated *supra,* the evidence satisfies the first element of affray, that there was, in fact, a fight, and we therefore need not consider this element further.

We will accordingly examine the hearing judge's ruling that the fight at issue occurred in a "public place," the second element necessary to prove an affray. As neither party offered any evidence showing, or even suggesting, that the fight took place on the first type of qualifying locale—a place generally considered public by the nature of its use or intended use—this type of "public place" has no bearing on the instant case.

IN RE MAY

[357 N.C. 423 (2003)]

We therefore confine our examination of the "public place" requirement to the second qualifying type: private property that is situated near enough to public thoroughfares that individuals using such thoroughfares could bear witness to the altercation. This Court must determine if there is ample evidence showing that the site of the altercation occurred in a place, although private property, that qualifies as a public place for purposes of proving the offense of affray.

The key to resolving the "public place" question in the case *sub judice* hinges less on the evidence actually presented than on potential evidence that was not introduced at the district court hearing. There are simply too many relevant questions regarding the "public place" element of affray that are unanswered by the evidence presented at the hearing. For instance, where precisely did the altercation take place? The record shows that the incident originated on or near a walkway on the grounds of the group Home. The record also shows that the altercation originated more than one hundred feet from the Home and continued as the combatants moved toward the front steps of the Home. However, no evidence was offered estimating the overall size of the property, describing the general characteristics of its terrain, or depicting the distance and characteristics of its surrounding properties. From hearing testimony, the most we can ascertain about the Home's grounds is that it extends over one hundred feet from one of the Home's structures and that there is a "hill area" located in front of the property. Another pertinent unanswered question is whether the altercation was within earshot or view of individuals who were or could have been present on adjacent public lands or thoroughfares. However, there is no way to discern this information because there is no evidence in the record indicating how far the property extended *beyond* the location of the altercation or if the property's terrain and fixtures precluded individuals not on the property from witnessing the altercation. As a consequence, we conclude that the State failed to prove beyond a reasonable doubt that the fight occurred in a "public place." Therefore, there was insufficient evidence to establish the second element of affray.

Concluding that the State has failed to satisfy one essential element of the offense in question would normally end our examination as to whether there is sufficient evidence to convict a defendant of that offense. However, proof of the third element of affray—that the fight in question caused terror to the people—may, in certain narrowly defined circumstances, satisfy the second element, that is, the fight occurred in a "public place." A fight that occurs on private prop-

erty, beyond the view and earshot of the general public, may nevertheless be witnessed by individuals who happen to be on the property and who are subject to the terror of the altercation. If so, the establishment of the third essential element of affray—that terror to the public occurred—satisfies the second element that the fight happened in a "public place."

We therefore examine whether there was sufficient evidence to establish that the altercation in question caused terror to the people, in order to provide clarity to our jurisprudence regarding the common-law offense of affray. Thus, this Court must evaluate whether the State's evidence proves beyond a reasonable doubt that the witnesses to the fight were members of the public who were, in fact, frightened by the fight.

Our examination of the record indicates there were no individuals passing by the property who were within view or earshot of the altercation. Thus, the question of whether the third element—terror to the people—was established is limited to determining if any or all of the four individuals who actually witnessed the event were subject to terror.

As discussed *supra*, our state's appellate courts have yet to classify precisely those persons who may be subject to the terror of an apparent affray that occurs on private property. A comprehensive 200-year survey of case law of North Carolina and other states yields no standard for adequately classifying witnesses who may or may not require protection from the terror associated with fights that occur on private property. An examination of affray-related cases reveals a series of decisions suggesting a standard akin to what United States Supreme Court Justice Potter Stewart candidly referred to as an "I know it when I see it" mind-set concerning the terror element. *Jacobellis v. Ohio*, 378 U.S. 184, 197, 12 L. Ed. 2d 793, 804 (1964) (Stewart, J., concurring). In some cases, courts are persuaded by the number of witnesses, while in others, the courts have deemed the number of witnesses irrelevant. Yet, in other cases, the courts' paramount consideration is the relationship between the witnesses and the combatants, while others do not consider that relationship a factor for consideration.

In *Fritz*, 133 N.C. at 728, 45 S.E. at 958, the case that has been cited as the definitive North Carolina affray case, this Court held a century ago that the actual presence of *seven* spectators to a fight placed them in harm's way and, therefore, rendered them subject to

the fight's terror. The analysis of the opinion, however, did not identify the relationship, or lack thereof, between the combatants and the terrorized witnesses.

In an opinion predating *Fritz*, the Alabama Supreme Court held that where two among just three persons fight in a field surrounded by a forest that is situated a mile from any highway or other public place, the third person witnessing the event was not a qualifying member of the public for purposes of experiencing the terror associated to an affray. *Taylor v. State*, 22 Ala. 15, 16 (1853). Similar to our Court's holding in *Fritz*, Florida's court of appeals held that the number of witnesses, *without even considering their relations to the combatants*, can sometimes satisfy the terror element for purposes of determining whether an affray occurred on private property. *D.J. v. State*, 651 So. 2d 1255, 1256 (Fla. Dist. Ct. App. 1995) (per curiam) (holding that the presence of approximately one-hundred witnesses to a fight on private property is enough to show potential for terror). Georgia's Supreme Court, however, concluded that the presence of not "more than a dozen or fifteen people" who witnessed a fight among six others on private property were not among those members of the public who could be terrorized by the fight. *Gamble v. State*, 113 Ga. 701, 703, 39 S.E. 301, 302 (1901). Thus, when it comes to numbers, seven spectators *can* be enough, *Fritz*, 133 N.C. at 728, 45 S.E.2d at 958, and one hundred spectators is certainly enough, *D.J.*, 651 So. 2d at 1256, but fifteen witnesses is inadequate, *Gamble*, 113 Ga. at 703, 39 S.E. at 302, and so is one, *Taylor*, 22 Ala. at 16, reflecting a state of inconsistency among the various jurisdictions.

Regardless of jurisdiction, the current state of the law provides no definitive criteria or examples by which to judge the terror element of a fight that occurs on private property. Our review of the above and other cases not cited herein has led us to conclude that the correct analysis in evaluating whether a fight caused terror to the people is to examine the *associations* between combatants and witnesses, rather than arbitrarily relying upon the number of spectators.

The Georgia Supreme Court's decision in *Gamble* provides a semblance of circumstances most analogous to the case at issue. We conclude that the analysis in *Gamble* is most persuasive and is enhanced with a compendium of law addressing factors to consider when deciding if spectators to a fight on private property were subject to the fight's terror.

In *Gamble*, 113 Ga. at 702, 39 S.E. at 302, a fight arose at a dance party held at a private home. The court in *Gamble* first determined there was insufficient evidence showing that the fight occurred within view or earshot of a public thoroughfare. *Id.* at 703, 39 S.E. at 302. The court then examined whether the other guests qualified as members of the public for purposes of the terror element of an affray and ultimately concluded they did not qualify. In the Georgia court's view, while a private locale may be rendered public when people are afforded the privilege of being there without invitation, such a place is *not* made public when it hosts an "assemblage of persons at a social party by express invitation." *Id.* As a consequence, the court concluded that the party guests who witnessed the altercation could not be included among those members of the public who could be terrorized by the fight. *Id.* at 703-04, 39 S.E. at 302-03.

In the instant case, we note that the spectators to the fight at issue—two adult employees of the Home and two juvenile residents of the Home—were associates of the combatants. In addition, the two adults were employed by the Home; regularly spent time there; and assisted in the Home's daily operations, including assessing and supervising its residents. The two resident witnesses lived at the Home along with the two combatants and other juvenile residents. None were social guests of the Home, at least not within the context of the holding in *Gamble*. However, we are aware of no precedent that would serve to distinguish the status of the four witnesses from that of invited guests. Our research shows that the presence of employees who are witnesses to a fight at a private facility has not been assessed for purposes of the terror element of an affray, nor has the presence of witnesses who live among combatants who fight at such a place. Nevertheless, two of the four witnesses were present at the facility by virtue of their employment, and the others were present by virtue of having been assigned to live there. Consequently, none of the four individuals was there by happenstance. *Id.* As a result, these four witnesses do not qualify as persons who might transform the facility from a private place into a public place. Both in our legal analysis and in a practical sense, we can find no justification for qualifying the four on other grounds. These four individuals had strong ties to the facility and either lived with the combatants or were employed at the facility. In our view, their presence is akin to that of family members who bear witness to a fight between siblings on the grounds of the family residence. Such altercations, put simply, cannot cause "terror to the people" within the meaning of the law of affray. As a consequence, we conclude that the fight in the instant case fails

to present one of those narrowly defined circumstances in which the second element of affray (that the fight occurred in a public place) is established by proof of the third element (that the fight caused terror to the people). Therefore, there was insufficient evidence to establish the second element of the common-law offense of affray.

We hold that the State failed to meet its burden to produce evidence sufficient to support either the second element of affray (that the fight occurred in a public place) or even the third element of affray (that the fight caused terror to the people) in its case against the juvenile. Thus, we conclude that the hearing judge erroneously denied the juvenile's motion to dismiss.

For the reasons stated herein, the decision of the Court of Appeals is affirmed.

AFFIRMED.