The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 21, 2019

## 2019COA22

**No. 16CA0236, *People in the Interest of D.C.* — Juvenile Court — Delinquency; Crimes — Public Indecency**

A division of the court of appeals considers whether sufficient evidence supported a juvenile's adjudication for public indecency committed in a Division of Youth Corrections' classroom. Interpreting the public indecency statute, § 18-7-301(1), C.R.S. 2018, the division concludes that the residents, staff, and teachers at the Division of Youth Corrections' facility are "members of the public" for purposes of the statute and, thus, sufficient evidence established that the juvenile exposed his genitals in a place "where the conduct may reasonably be expected to be viewed by members of the public."

COLORADO COURT OF APPEALS                                    **2019COA22**

Court of Appeals No. 16CA0236
Mesa County District Court No. 15JD243
Honorable Thomas M. Deister, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of D.C.,

Juvenile-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE DUNN
Márquez* and Casebolt*, JJ., concur

Announced February 21, 2019

Philip J. Weiser, Attorney General, Kevin E. McReynolds, Assistant Attorney
General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Ryann S. Hardman, Deputy
State Public Defender, Denver, Colorado, for Juvenile-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     D.C. and E.L. were committed to the Division of Youth Corrections (DYC).  During their DYC science class, D.C. exposed one of his testicles to E.L.  E.L. reported the incident, and the prosecution filed a delinquency petition, alleging that D.C. committed an act that, if committed by an adult, would constitute public indecency.  After a bench trial, the juvenile court adjudicated D.C. delinquent.

¶ 2     D.C. appeals, contending that insufficient evidence supported the adjudication.  We disagree and therefore affirm.

## I.     Sufficiency of the Evidence

¶ 3     D.C. argues the prosecution failed to establish that the DYC classroom, where D.C. exposed his testicle, was a "public place" under the public indecency statute, § 18-7-301(1), C.R.S. 2018.  We are persuaded the evidence was sufficient to support the adjudication.  We, however, come to this conclusion not because the classroom was a public place (an issue we don't reach) but because D.C. exposed himself where members of the public were reasonably likely to see it.

## A. Standard of Review

¶ 4    We review challenges to the sufficiency of evidence de novo. *People in Interest of G.B.*, 2018 COA 77, ¶ 13.  In doing so, we must determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational fact finder that the juvenile committed the act beyond a reasonable doubt.  *Id.*  We give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence.  *People v. Perez*, 2016 CO 12, ¶ 32.

¶ 5    We likewise interpret the public indecency statute de novo. *See People v. Halbert*, 2013 COA 95, ¶ 11.  We give the statutory words their plain and ordinary meanings, and, if the statute is unambiguous, we apply it as written.  *Id.*

## B. Public Indecency

¶ 6    As relevant here, a person commits public indecency by knowingly exposing his genitals to the view of another under circumstances that are likely to cause affront or alarm "in a public place or [in a place] where the conduct may reasonably be expected to be viewed by members of the public." § 18-7-301(1)(e).  The

2

statute therefore identifies two different ways to commit the crime of public indecency — exposing oneself "in a public place" or exposing oneself in a place where members of the public "may reasonably be expected" to view the exposure. *See id.*; *see also Willhite v. Rodriguez-Cera,* 2012 CO 29, ¶ 18 ("[T]he use of the disjunctive 'or' reflects a choice of equally acceptable alternatives."); *cf. Friend v. People,* 2018 CO 90, ¶¶ 18-19 (Where a criminal statute sets forth different ways to commit a crime, separated by the disjunctive "or," it "prescribes a single crime" that "can be committed in alternate ways.").

¶ 7 Responding to D.C.'s motion for judgment of acquittal at trial, the prosecution argued that it had presented sufficient evidence establishing that the DYC classroom was a "public place" or that the exposure occurred in a place "where the conduct might reasonably ha[ve] been expected to be viewed by members of the public."[1] The juvenile court recognized that DYC residents, teachers, and staff are "members of the public," but ultimately

---

[1] D.C. didn't challenge the sufficiency of evidence as to any other element of the public indecency statute at trial, nor does he on appeal.

denied the motion because it concluded that the DYC classroom was a "public place."

¶ 8     The parties disagree on whether the DYC classroom is a "public place" under the public indecency statute. But we need not wade into this disagreement because sufficient evidence showed that D.C. exposed his genitals in a place "where the conduct may reasonably be expected to be viewed by members of the public." § 18-7-301(1); *see People v. Steerman*, 735 P.2d 876, 879 (Colo. 1987) (reinstating a jury verdict vacated by the district court because sufficient evidence supported a statutory alternative for committing the charged crime); *People v. Prendergast*, 87 P.3d 175, 186 (Colo. App. 2003) (rejecting the defendant's sufficiency of the evidence challenge when the jury instruction phrased an element of the crime in the disjunctive and sufficient evidence supported the alternative manner to commit the crime); *cf. People v. Dunaway*, 88 P.3d 619, 629 n.9 (Colo. 2004) (when elements of a crime are listed in the "disjunctive," "proof of one" is sufficient); *People v. Viduya*, 703 P.2d 1281, 1292 (Colo. 1985) ("[When t]he statute describes two ways in which this offense can be committed[,] . . . [i]t is then

proper to instruct the jury in the disjunctive, requiring conviction if any of the statutory alternatives is established by the evidence.").

¶ 9        In that regard, E.L. testified that nine or ten other students and a teacher were in the DYC classroom when D.C. exposed himself. He also said that DYC staff were outside the classroom. Another student confirmed that the teacher and other students were present at the time of the incident. And a correctional officer testified that DYC staff go in and out of the classrooms and that they "use the classrooms for lots of different things." The officer also explained that the juvenile residents (under staff supervision) may go in and out of the classrooms during school hours and that at times parents can "come in and visit" the school for such reasons as parent-teacher conferences. Given this testimony, the juvenile court recognized that a "substantial . . . number of members of the community" are present in the school.

¶ 10       Viewing the evidence in the light most favorable to the prosecution — as we must — a reasonable fact finder could conclude that D.C. knowingly exposed his genitals to E.L. in a place "where the conduct may reasonably be expected to be viewed by

members of the public." § 18-7-301(1).  The evidence therefore sufficiently supports the adjudication.

¶ 11    Attempting to avoid that result, D.C. leans heavily on *In re May*, 584 S.E.2d 271 (N.C. 2003), arguing that the DYC residents, teachers, and staff are not "members of the public" while in the classroom because, he contends, they are present there "only by virtue of having been assigned to live there or . . . their employment."  We see a few problems with this argument.

¶ 12    First, *May*, is distinguishable.  It considered whether sufficient evidence supported the elements for the common law crime of "affray" (recognized in North Carolina), when a juvenile was involved in a physical fight on the grounds of a children's group home.  *Id.* at 272-73.  A necessary element of this crime is that the fight occurred "in a public place."  *Id.* at 274.  Concluding the prosecution didn't present evidence establishing this element, the court reversed the juvenile's adjudication.  In doing so, it recognized that only residents and staff of the children's home ("associates of the combatants") witnessed the fight and such witnesses with "strong ties to the facility" did not "transform the facility . . . into a public place."  *Id.* at 277.  *May* did not hold that residents and staff of a

6

juvenile facility can't be members of the public.  *See id.* at 276-77.
Thus, *May* adds little to our analysis.

¶ 13    Second, the public indecency statute does not require that the "members of the public" actually see the exposure, just that the exposure occur in a place where members of the public "may reasonably be expected" to see it.  § 18-7-301(1).  D.C.'s argument, therefore, doesn't account for the testimony that family members can (and do) visit the DYC school.  These nonstaff members of the public "may reasonably be expected" to view conduct in the school, even if they might not have been physically present when D.C. exposed himself.  This undisputed evidence alone supports the adjudication.

¶ 14    Third, we see no reason why DYC teachers, staff, and juvenile residents are not "members of the public."  After all, a "member" means "one of the individuals composing a society, community, association, or other group."  Webster's Third New International Dictionary 1408 (2002).  The legislature didn't exclude teachers, staff, or juvenile DYC residents from being "members of the public" in the public indecency statute.  And we are unaware of any authority stripping DYC teachers and staff of their public

membership simply due to their place of employment. *Cf. Doe v. Colo. Dep't of Pub. Health & Env't,* 2018 COA 106, ¶ 38 ("'[M]ember' plainly means something different than 'employee.'") (*cert. granted* Jan. 14, 2019). In the same way, juvenile DYC residents' inability to freely leave the facility doesn't mean they lose their status as "members of the public" entitled to protection from public indecency.

¶ 15    In fact, *People v. Hoskay,* 87 P.3d 194 (Colo. App. 2003), reached a similar conclusion, albeit in a slightly different context. There, the defendant was convicted of public indecency for having sexual intercourse in the dormitory room of a detoxification facility. *Id.* at 198. The division rejected the defendant's sufficiency argument, concluding that "[t]he evidence established that the dormitory room of the detoxification facility was open to [those] admitted to the facility, as well as to the staff." *Id.* at 199. It thus held that sufficient evidence supported the jury's finding that the room was "a place where sexual conduct may reasonably have been expected to be viewed by members of the public." *Id.*

¶ 16    And our conclusion is consistent with courts in other jurisdictions, which have found that staff and residents of

correctional facilities may be members of the public when considering similar crimes. *See State v. Narcisse*, 833 So. 2d 1186, 1192 (La. Ct. App. 2002) (upholding the defendant's conviction for obscenity in public view when he masturbated in front of jail infirmary staff); *People v. Williams*, 603 N.W.2d 300, 302 (Mich. Ct. App. 1999) (concluding that oral sex in a jail interview room was committed in a place where members of the public could have been exposed, including "jail personnel, attorneys, and visitors"), *vacated in part*, 613 N.W.2d 721 (Mich. 2000); *cf. State v. Black*, 545 S.W.2d 617, 619 (Ark. 1977) (concluding that oral sex in the city jail's "drunk tank" occurred in a public place where jail staff, other inmates, and people on public tours could view the act); *People v. Giacinti*, 358 N.E.2d 934, 937 (Ill. App. Ct. 1976) (affirming public indecency conviction committed in a prison cell that could have been viewed by prison staff, prisoners, and visiting ministers).

## II.    Conclusion

For these reasons, we conclude that sufficient evidence supports D.C.'s public indecency adjudication and therefore affirm it.

JUDGE MÁRQUEZ and JUDGE CASEBOLT concur.