IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-495

No. COA21-231

Filed 19 July 2022

Craven County, Nos. 19CRS053214; 19CRS053215; 19CRS053216; 19CRS053217

STATE OF NORTH CAROLINA

v.

DARREN OBRIEN LANCASTER, Defendant.

Appeal by Defendant from judgments entered 14 September 2020 by Judge Joshua Willey, Jr., in Craven County Superior Court. Heard in the Court of Appeals 23 February 2022.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Melissa H. Taylor, for the State.*

> *Cooley Law Office, by Craig M. Cooley, for the Defendant.*

DILLON, Judge.

¶ 1 Defendant Darren O. Lancaster was found guilty of possession of a firearm by a felon; resisting a public officer; injury to personal property; and going armed to the terror of the public for acts committed in the parking lot of an apartment complex.

¶ 2 Defense counsel, finding no errors in the record, asks this Court to conduct its own review for possible meritorious issues. Defense counsel has demonstrated to the satisfaction of this Court compliance with the requirements of *Anders v. California*,

386 U.S. 738 (1967) and *State v. Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985), by advising Defendant of his right to file written arguments with this Court and providing him with the necessary documents.[1]

¶ 3         In our review of the record, we have found one error.  Based on our Court's holding in *State v. Staten*, 32 N.C. App. 495, 232 S.E.2d 488 (1977), we are compelled to conclude that the trial court lacked jurisdiction to enter its judgment on the charge of going armed to the terror of the public (a crime that is sometimes described as going armed to the terror of the *people*).  Specifically, the indictment charging that offense was fatally defective in that it failed to allege that Defendant committed his act on a "public highway."  We, therefore, vacate the judgment convicting Defendant of this charge and remand the matter for resentencing.

## I.        Analysis

¶ 4         Our state constitution provides that "[e]xcept in misdemeanor cases initiated in the District Court Division, no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment."  N.C. Const. art. I, § 22.  In compliance with our constitution, a common method in which a criminal case is initiated *in superior court* is by indictment, where a grand jury of twelve has first

---

[1] It is not apparent from the record that Defendant properly noticed his appeal.  To the extent we do not have jurisdiction, in our discretion we issue a writ of *certiorari* "in aid of [our] jurisdiction."  N.C. Gen. Stat. § 7A-32(c).

determined that probable cause exists that the defendant committed the crime. *State v. Barker*, 107 N.C. 913, 918, 12 S.E. 115, 117 (1890) (stating that every defendant "charged with a criminal offense [by indictment] has the right to the decision of twenty-four of his fellow-citizens upon the question of his guilt: first, by a grand jury [of twelve], and secondly, by a petit jury [of twelve]"). The superior court, therefore, does not obtain jurisdiction to try a defendant by way of grand jury indictment unless the indictment "asserts facts supporting every element of the criminal offense" being charged. *State v. Oldroyd*, 2022-NCSC-27, ¶8. And "[w]hether or not a trial court possesses subject-matter jurisdiction is a question of law that is reviewed de novo." *In re A.L.L.*, 376 N.C. 99, 101, 852 S.E.2d 1, 4 (2020).

¶ 5 Though indictments are typically used to charge felonies, the principles concerning indictments apply equally to misdemeanor charges initiated in superior court. *See State v. Thomas*, 236 N.C. 454, 459, 73 S.E.2d 283, 286-87 (1952) (instructing that "[a]s a general rule, a person charged with the commission of a misdemeanor in any case other than that [provided for by our General Assembly] must be prosecuted in the Superior Court on an indictment by a grand jury").

¶ 6 In this matter, the prosecutor chose to have Defendant tried in superior court in the first instance by way of indictment for the common law crime of "going armed to the terror of the public," a misdemeanor. The grand jury alleged in its indictment that Defendant committed this crime while *in the parking lot* of a private apartment

complex, specifically that he "unlawfully, willfully and feloniously did go armed to the terror of the public by causing a disturbance and waving a firearm around in the parking lot of 326 McCotter Blvd Apartment, Havelock[.]"

¶ 7        This issue before us is whether the indictment charging Defendant with going armed to the terror of the public adequately asserted facts supporting every element of that crime.   For the reasoning below, we must conclude that the indictment is fatally defective because it fails to allege that Defendant acted on a public highway. Specifically, in 1977, our Court – construing a 1968 opinion from our Supreme Court – held that "the four essential elements" of this common law crime are:

> (1) armed with unusual and dangerous weapons, (2) for the unlawful purpose of terrorizing the people of the named county, (3) by going about the public highways of the county, (4) in a manner to cause terror to the people.

*State v. Staten*, 32 N.C. App. 495, 497, 232 S.E.2d 488, 490 (1977) (relying on *State v. Dawson*, 272 N.C. 535, 159 S.E. 2d 1 (1968)).   Our Court held that the charging document was "insufficient" because if failed to allege that the defendant committed his act of terror while going about the public highways of the county[.]" *Id*.

A.        *Staten* is controlling.

¶ 8        For at least six and a half centuries, courts (including our Supreme Court) understood that a defendant could commit the crime of "going armed to the terror of the public" in any location that the public is likely to be exposed to his acts, even if

committed on privately-owned property. As explained by our Supreme Court in 1843, "the offense of riding or going about armed with unusual and dangerous weapons, to the terror of the people" was first recognized legislatively as a common law crime in the Statute of Northampton adopted in 1328 during the reign of Edward III of England, *State v. Huntly*, 25 N.C. 418, 420-21 (1843). *See also State v. Dawson*, 272 N.C. 535, 543, 159 S.E.2d 1, 7 (1968). This 1328 Statute stated that the common law crime could be committed at "**Fairs [and] Markets [or] elsewhere**," with no mention that it could only be committed along a public highway or other public property. Statute of Northampton 1328, 2 Edw. 3, ch. 3 (quoted in *Rogers v. Grewal*, 140 S. Ct. 1865, 1869 (2020) (Thomas dissenting)).

¶ 9        In its 1843 *Huntly* decision, our Supreme Court quotes Blackstone and other early authorities which understood that the common law crime is committed when the defendant carries weapons in a manner which "cause terror to the people" or "to the terror of others" or "affrighteth and maketh men afraid", etc., without any reference that the defendant *must* have acted while on a "public highway" to be subject to criminal liability. *Huntly*, 25 N.C. at 421-22.

¶ 10       Our Supreme Court actually discussed this common law crime in 1824, 19 years prior to *Huntly* in a case that has never been cited by a North Carolina appellate court (until today) but which was cited by the United States Supreme Court in its landmark Second Amendment *Heller* decision. *Dist. Of Columbia v. Heller*, 554 U.S.

570, 627 (2008) (citing *State v. Langford*, 10 N.C. 381 (1824)). In *Langford*, Chief Justice John Louis Taylor, our State's first Chief Justice, writing for the Court, sustained a conviction where the defendant committed his act of terror while on private property. Specifically, the indictment in that case alleged that the act of terror occurred while the defendant was "at the house of one Sarah Roffle[.]" *Langford*, 10 N.C. at 381. The Court based on its decision partly on its understanding that "a man [who] arms himself . . . in such manner as will naturally cause a terror to the people [commits] an offence at common law[.]" *Id*, at 383-84.

¶ 11     We point out that in both the 1824 *Langford* decision and the 1843 *Huntly* decision, our Supreme Court noted that this common law crime was historically viewed as a type of "affray". *Id.* and *Langford*, 25 N.C. at 421. Our Supreme Court though has recognized that *technically* the crime of causing an affray and the crime of going armed to the terror of the public, though similar, are two distinct crimes. That is, an affray technically only occurs when there are at least two bad actors who engage in a fight to the terror of the public, *In re May*, 357 N.C. 423, 427, 584 S.E.2d 271, 274 (2003) (stating that "[a]n affray is defined at common law as a fight between two or more persons in a public place as to cause terror to the public," relying on *State v. Wilson*, 61 N.C. 237 (1867)). Going armed to the terror of the public, however, can occur when one bad actor acts alone. *See State v. Rambert*, 341 N.C. 173, 177, 459

S.E.2d 510, 513 (1995) (holding that evidence showing that a defendant acting alone causing terror was sufficient to sustain a conviction).

¶ 12 Like the crime at issue here, it has long been understood that the common law crime of affray can occur in locations other than along a public highway. For instance, in its 1993 *May* decision – decided 16 years after our Court held that the common law crime of going armed to the terror of the people could only occur on a public highway – our Supreme Court explained that a common law affray could occur in locations "open to public traffic," whether publicly or privately owned, such as "roads, streets, highways, sidewalks, shopping malls, ***apartment complexes***, parks, and commons." *May*, 357 N.C. at 427, 584 S.E.2d at 274 (emphasis added).

¶ 13 A panel of our Court, however, in our 1977 *Staten* decision, expressly cited and relied on our Supreme Court's 1968 *Dawson* decision to hold that the common law crime of going armed to the terror of the public only occurs when one causes terror while "going about the public highways of the county[.]" *Staten*, 32 N.C. App. at 497, 232 S.E.2d at 490 (explaining that "going about the public highways" is a "necessary element[]" which must be alleged in the charging document to sustain a conviction).

¶ 14 The indictment at issue in the 1968 *Dawson* case does allege that the defendant committed his act on a "public highway." Likewise, the indictment in the 1843 *Huntly* case alleged that the defendant acted while going along the public highways. While *we* might not construe *Dawson* (or *Huntly*) as *requiring* the act to have occurred on a

public highway to sustain a prosecution of this common law crime, we are bound by the *Staten* panel's interpretation of *Dawson*. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). *In re Civil Penalty* requires that we follow a holding from another panel of our Court which involves the "narrowing or distinguishing [of] an earlier controlling precedent – even one from the Supreme Court[.]" *State v. Gonzalez*, 263 N.C. App. 527, 531, 823 S.E.2d 886, 888 (2019).[2]

¶ 15    And while in 1993 our Supreme Court took the occasion in *May* to explain the common law crime of affray need not occur on a public highway, that Court has never addressed our 1977 *Staten* decision. In fact, our Supreme Court has only addressed going armed to the terror of the public once since *Staten*, in its 1995 *Rambert* decision. However, the "public highway" issue did not come up in *Rambert*, as the indictment in that case (contained in the Onslow County Superior Court file - 92 CVS 13019) alleged that "while thus armed [Mr. Rambert] went about *the public highways* of Onslow County in a manner to cause terror to the people[.]" (Emphasis added.)

B.    <u>The parking lot of an apartment complex is not a "public highway"</u>.

---

[2] Had our panel in *Staten* not mentioned our Supreme Court's 1966 *Dawson* decision or other controlling Supreme Court precedent in reaching its decision, we could ignore *Staten*. *See Gonzalez*, 263 N.C. App. at 531, 823 S.E.2d at 889; *BB&T v. Smith*, 239 N.C. App. 293, 298, 769 S.E.2d 638, 642 (2015) (following a 1938 Supreme Court case rather than more recent Court of Appeals holdings which did not reference the earlier Supreme Court decision). But such is not the case, as our panel in *Staten* expressly interprets the *Dawson* holding.

¶ 16    We conclude that the private parking lot of an apartment complex – the location alleged in the indictment in this case – does not constitute a "public highway" for purposes of charging Defendant with going armed to the terror of the public.

¶ 17    Though we found no North Carolina case defining "public highway" for purposes of the common law crime before us, we are persuaded by decisions from our Supreme Court in other contexts in reaching our conclusion.   For instance, as previously noted, that Court in *May* distinguished "highways" from "shopping malls, apartment complexes, parks, and commons[.]"  *May*, 357 N.C. at 427, 584 S.E.2d at 274 (emphasis added).   Also, our Supreme Court has described a "cartway" as a "*quasi*-public road", but distinguished a "cartway" from a "public highway", defining the latter as a road "*established and maintained by public authority* for the traveling public[.]"  *Waldroup v. Ferguson*, 213 N.C. 198, 195 S.E.2d 615 (1938) (emphasis added).  *See also Parsons v. Wright*, 223 N.C. 520, 522, 27 S.E.2d 534, 537 (1943) (describing cartways as "an auxiliary part of the public road system of the county although they are distinguished from public highways proper"); *State v. Purify*, 86 N.C. 681, 682 (1882) (defining a "public highway" as "one established by a public authority and kept in order by the public . . .").

## II.    Conclusion

¶ 18    Irrespective of our view concerning our Court's interpretation in *Staten* of our Supreme Court's 1967 *Dawson* opinion, we must follow *Staten*'s interpretation.   As

such, we conclude the superior court lacked jurisdiction to enter judgment against Defendant for going armed to the terror of the public; and, therefore, the judgment of the superior court convicting Defendant of this crime must be vacated.

¶ 19          The trial court consolidated this conviction into a single judgment with the felony possession conviction. We, therefore, remand the consolidated judgment for resentencing. *See State v. Toney*, 187 N.C. App. 465, 472, 653 S.E.2d 187, 191 (2007) (relying on *State v. Brown*, 350 N.C. 193, 213, 513 S.E.2d 57, 70 (1999)).

¶ 20          We, otherwise, did not find any error with respect to the other judgments and, therefore, leave those judgments undisturbed.

NO ERROR IN PART, VACATED IN PART, REMANDED FOR RESENTENCING IN PART.

Judge DIETZ concurs.

Judge GRIFFIN concurs in part and dissents in part with separate opinion.

GRIFFIN, Judge, concurring in part and dissenting in part.

¶ 21    I agree with the majority that this Court's decision in *State v. Staten*, 32 N.C. App. 495, 232 S.E.2d 488 (1977), was likely decided incorrectly but that we are bound by it. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). I write separately because our Supreme Court's decision in *State v. Rambert*, 341 N.C. 173, 459 S.E.2d 510 (1995), decided eighteen years after *Staten*, supports holding that the indictment in the case at bar is not fatally defective.

¶ 22    In *Rambert,* the defendant pulled his car up next to an acquaintance in the parking lot of a Piggly Wiggly store. *Id.* at 176, 459 S.E.2d at 512. After exchanging some words, the defendant pointed a gun at the acquaintance's vehicle and fired a shot through the vehicle's windshield. *Id.* A chase ensued in the parking lot, and the defendant fired additional shots at the vehicle. *Id.* at 176, 459 S.E.2d at 512–13. The defendant was charged and convicted of several offenses, including the felony charge of "going armed to the terror of the people." *Id.* at 174, 459 S.E.2d at 511. As noted by the majority, "the indictment in *Rambert* (found in the Onslow County Superior Court file - 92 CVS 13019) alleged that 'while thus armed [Mr. Rambert] went about *the public highways* of Onslow County in a manner to cause terror to the people[.]'" (Emphasis added).

¶ 23    On appeal, the Supreme Court did not take issue with the fact that the crime was committed in a parking lot. Instead, the Court remanded the matter with instructions for the trial court to enter a conviction on the charge of going armed to

the terror of the people as a misdemeanor, holding that the charge was "improperly elevated to a felony." *Id.* at 177, 459 S.E.2d at 513. If the Supreme Court did not consider a parking lot to be a public highway or otherwise considered the indictment fatally defective, it not only would have reversed the conviction entirely, it would have been bound to do so for lack of subject matter jurisdiction. *See Lemmerman v. A.T. Williams Oil Co.,* 318 N.C. 577, 580, 350 S.E.2d 83, 86 (1986) ("When the record clearly shows that subject matter jurisdiction is lacking, the Court *will* take notice and dismiss the action *ex mero motu.*" (emphasis added) (citation omitted)); *In re Harts,* 191 N.C. App. 807, 809, 664 S.E.2d 411, 413 (2008) ("Subject matter jurisdiction may not be waived, and this Court has the power *and the duty* to determine issues of jurisdiction *ex mero motu,* and to dismiss an appeal if we find it lacking." (emphasis added) (citation omitted)).

¶ 24        Based on *Rambert,* the indictment in this case sufficiently alleged that Defendant committed his act on a "public highway." The indictment states that Defendant went "armed to the terror of the public by causing a disturbance and waving a firearm around *in the parking lot of 210 Shipman Road Apartments*[.]" (Emphasis added). Although the indictment does not use the phrase "public highway," "indictments need only allege the ultimate facts constituting each element of the criminal offense[,]" and "a very detailed account is not necessary for legally sufficient indictments[.]" *Rambert,* 341 N.C. at 176, 459 S.E.2d at 512 (citation

*GRIFFIN, J., concurring in part and dissenting in part.*

omitted). By alleging that the act was committed in the parking lot of an apartment complex, the indictment was legally sufficient. *Id.*

¶ 25          For these reasons, I find no error in the trial court's judgments.